944 So.2d 900 (2006)
Derrick Cordell HARRIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-CP-01325-COA.
Court of Appeals of Mississippi.
August 8, 2006.
Rehearing Denied December 12, 2006.
*902 Derrick Cordell Harris (Pro Se), attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before MYERS, P.J., SOUTHWICK and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Originally indicted for capital murder, Derrick Cordell Harris pled guilty in the Circuit Court of Wayne County to a charge of simple murder and was sentenced to life in prison. Harris filed a motion for post-conviction relief which was denied by the circuit court, and from that denial he appeals. Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. The grand jury indicted Harris for capital murder under Mississippi Code Annotated section 97-3-19(2)(e) (Supp.2005) finding that Harris killed Isaih Blanks, Sr.[1] of the Buckatunna Community while in the act of robbing him. After a finding of indigent status, the circuit court ordered the appointment of Tommy Dickerson of Waynesboro and Leslie Roussell of Laurel as counsel. Harris's defense counsel filed a series of motions, including a motion for a mental evaluation which was granted on April 11, 2003. The evaluation found that Harris was competent to stand trial and that he did not suffer from any degree of retardation.
¶ 3. On August 29, 2003, after plea bargaining, Harris filed a petition to enter a guilty plea to a charge of simple murder under Mississippi Code Annotated section 97-3-19(1)(a) (Rev.2005) with an agreed sentence of life imprisonment and court costs of $250.[2] The circuit court then conducted the plea qualification hearing to determine if the entry of the guilty plea was a voluntary and intelligent act by Harris. The court found Harris's plea to be freely, voluntarily and intelligently entered. Harris admitted killing Blanks with a shotgun which allegedly went off while he was struggling with Blanks. After Harris recounted this version of accidental shooting, the court questioned his attorneys as to whether they had explored the defense of accident. Defense counsel Roussell explained that Harris had given three versions of the shooting: a videotaped statement in which Harris first said that when he came out of Blanks' bathroom, Blanks pointed a gun at him and that as they struggled over the gun, it went off killing Blanks; a second statement in which Harris changed his story stating that the shooting occurred in the *903 living room instead of the bedroom as previously stated; and a third version in which Harris said that he had killed Blanks with a shotgun, not necessarily as an accident or in self-defense. Roussell also informed the judge that a witness would testify that Harris brought him the shotgun and told him to hide it. The district attorney advised the judge that if the case went to trial, the prosecution was prepared to show that when taken into custody, Harris had two rings, a pocket knife and another personal item which were identified by Blanks' daughter as belonging to her father. Roussell told the court that after the district attorney offered the plea agreement of simple murder with a life sentence instead of capital murder with a possible death sentence, he discussed the deal with Harris, and they agreed that it would be the best option. The court asked Harris if that was how he understood the facts and the agreement, and Harris responded yes. After further questioning, the court accepted the guilty plea and sentenced Harris to life in the custody of the Mississippi Department of Corrections. On July 21, 2004, Harris pro se filed a post-conviction relief petition. Then on September 2, 2004, he filed a document styled, "Amended Petition," which the trial court also treated as a petition for post-conviction relief.
¶ 4. Harris's post-conviction petition alleged (1) ineffective assistance of counsel; (2) involuntary plea; (3) defective indictment; (4) excessive sentence; and (5) prosecutorial misconduct. In a twenty-five-page opinion, the circuit court denied Harris's claims for post-conviction relief. From that denial, Harris appeals to this Court.
¶ 5. On appeal Harris raises four issues which we quote verbatim:
(1) Whether the court erred by not granting an evidentiary hearing on plaintiff's post-conviction motion upon the merits of his claim that his attorney advised him wrong regarding his sentence under the plea agreement?
(2) Whether the court erred in allowing plaintiff to plead to the plea bargain when the records "clearly" show plaintiff's confusion, and not advising him of the minimum/maximum sentence plaintiff would receive from the charge against him?
(3) Whether the court erred by not determining whether or not plaintiff received effective assistance of counsel?
(4) Whether the court erred in not determining whether or not plaintiff's indictment was defective?

STANDARD OF REVIEW
¶ 6. In reviewing a trial court's decision to deny a petition for post-conviction, this Court will not reverse such a denial absent a finding that the trial court's decision was clearly erroneous. Kirksey v. State, 728 So.2d 565, 566(¶ 8) (Miss.1999). However, where questions of law are raised, the standard of review is de novo. Rice v. State, 910 So.2d 1163, 1164-65(¶ 4) (Miss.Ct.App.2005). The trial court's obligation is to review the original motion and all files, records, transcriptions and correspondence relating to the judgment under attack so that the allegations may be resolved upon the merits. Miss. Code Ann. § 99-39-11(1) (Rev.2000). The burden is upon Harris to prove by a preponderance of the evidence that he is entitled to the requested post-conviction relief. See Miss.Code Ann. § 99-39-23(7) (Rev. 2000).
(1) Evidentiary Hearing
¶ 7. Harris's first argument is that the trial court erred when it failed to conduct an evidentiary hearing before dismissing his petition. The State counters that the *904 judge's actions were correct because the pleadings and the transcript of the plea hearing show that Harris was not entitled to relief.
¶ 8. A trial court is not required to conduct an evidentiary hearing when there is no genuine issue of material fact. Miss. Code Ann. § 99-39-19 (Rev.2002). A summary disposition of the motion is warranted when "it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." Id.
¶ 9. Below we will review the alleged errors which Harris claims should have entitled him to a hearing at which he claims he would have prevailed.
(2) The Plea Hearing
¶ 10. Harris argues that his guilty plea was not knowingly and intelligently entered because he was "confused" about the plea and that had he understood, he would not have agreed to plead guilty. He asserts that he was not informed of the maximum and minimum sentences for the crime to which he pled.
¶ 11. Our jurisprudence requires an unambiguous showing of voluntariness when a plea of guilty is made by a defendant because the defendant who enters a guilty plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to a jury trial and his right to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order for a defendant to make a due process waiver of these fundamental rights, the accused must possess a knowledge of the law in relation to the facts and voluntarily and intelligently enter a plea of guilty. Goss v. State, 730 So.2d 568, 573(¶ 20) (Miss.1998). A plea of guilt is voluntary and intelligently made only when a defendant has been advised "concerning the nature of the charge against him and the consequences of the plea." Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992) (citing Wilson v. State, 577 So.2d 394, 396-97 (Miss.1991)). The burden of proving that the guilty plea was not voluntarily is on the defendant and must be proven by a preponderance of the evidence. Stevenson v. State, 798 So.2d 599, 602(¶ 7) (Miss.2001).
¶ 12. We find no confusion by Harris as to his understanding of his plea and sentence. First, the sworn petition to enter a plea of guilty shows that he knew he was charged with capital murder which carried a minimum sentence of life in prison and a maximum sentence of death. Further the petition states that he desired to plead guilty to the charge of murder (not capital) and that the possible sentence was life imprisonment. Harris signed the petition to enter a plea of guilty and acknowledged his signature to it at the plea hearing. While the record does show that at one point Harris told the court the killing was accidental, he later agreed to plea guilty. A recitation from the plea hearing is in order to show the lack of merit to Harris's argument:
BY THE COURT: Okay. You are charged here with capital murder in this case. The possible punishments for capital murder are death by lethal injection down to a life imprisonment sentence, and a fine of zero up to $10,000. Do you understand that those are the minimum and maximum possible punishments?
HARRIS: Yes, sir.
COURT: All right. This guilty plea petition indicates to me that you are wanting to plead guilty to a charge of what is referred to as simple murder. There is only one sentence for that offense under Mississippi law, and that is life imprisonment. It carries a fine of *905 zero up to $10,000 also. Do you understand that?
HARRIS: Yes, sir.
COURT: All right. This guilty plea petition that I'm looking at, Derrick, has been signed right here (indicating) Derrick Harris; do you see that?
HARRIS: Yes, sir.
COURT: Is that your signature?
HARRIS: Yes, sir.
The court then explained in detail the rights Harris was giving up by pleading guilty and Harris said that he understood the rights he was giving up.
COURT: Do you, in fact, want to plead guilty to this charge of simple murder?
HARRIS: Yes, sir.
. . . .
COURT: Derrick, has anybody tried to force you into pleading guilty or make you do this when you really don't want to plead guilty but you want to go to trial?
HARRIS: No, sir.
COURT: Is this what you want to do under all the circumstances?
HARRIS: This is what I got to do.
COURT: Well
HARRIS: It's not a matter of what I want to do. You know what I'm saying? You know, ain't no need to be prolonging it any longer. I'm ready to go on and get it all over with.
BY MR. ROUSSELL [attorney for Harris]: He is asking you if this is what you want to do under all the circumstances. In other words, have you weighed your options and do you feel this is in your best interest under the circumstances.
HARRIS: Yes.
The court continued questioning Harris and gained concurrence from him that no one had promised him anything in order to induce him to plead guilty other than the plea bargain.
COURT: Have you had a chance to talk with your lawyers about your case?
HARRIS: Yes, sir.
COURT: Have they explained to you the elements of the crime of murder as well as any possible defenses that you might have to this charge?
HARRIS: Yes, sir.
COURT: Are you satisfied with the legal advice that Mr. Roussell and Mr. Dickerson have given you?
HARRIS: Yes, sir.
The court next explained to Harris that before his guilty plea could be accepted there must be factual basis for the plea.
COURT: Paragraph 16 [of Harris's petition to enter a guilty plea] says that you killed Isaac Blanks, Sr., on December 30, 2001 by shooting him here in Wayne County, Mississippi, and doing that not in necessary self-defense. Is that true?
HARRIS: Yes, sir.
COURT: What kind of weapon or gun did you use to shoot him?
HARRIS: A shotgun.
COURT: A shotgun?
HARRIS: (Nodding head).
. . . .
COURT: Did you do this deliberately and willfully?
HARRIS: No.
COURT: How do you say that? Because your petition says that you killed him. You didn't intend to kill him?
HARRIS: No.
COURT: How did it happen then, sir?
HARRIS: It was a struggle and the gun went off. But, you know what I'm saying, I was the only person there.
COURT: Are you in any way claiming that this killing of him was an accident?

*906 HARRIS: Yeah.
As previously discussed the court then asked Harris's counsel if they had discussed any defenses Harris might have. Defense counsel Roussell responded that Harris gave three different versions of the shooting on a videotape which would come into evidence. Also the district attorney informed the judge that if the case went to trial, the prosecution was prepared to prove capital murder as Harris was in the act of robbery. Roussell told the court that he advised Harris that it was his opinion that there was no way the jury would believe the killing was an accident based upon the evidence and that he recommended the plea agreement since the possibility of a death sentence for Harris was removed. Roussell said that based on all of the discussions and in light of the plea bargain offered by the district attorney, Harris decided to agree to the plea offer.
COURT: Did you hear everything, Mr. Harris, your lawyer just said?
HARRIS: Yes, sir.
COURT: Is what he said true?
HARRIS: Yes, sir.
¶ 13. Before hearing statements from the victim's family, the court asked Harris if he had any questions of the court or if there was anything that he did not understand, to which Harris replied in the negative.
¶ 14. From this record, we are convinced that Harris's plea was knowingly and voluntarily entered. At the point where Harris appeared to indicate that he did not commit a murder but that the killing instead was accidental, the court stopped questioning Harris and directed questions to his attorney as to whether he had explored possible defenses with Harris. The attorney explained to the court that the evidence would show Harris gave inconsistent statements as to how the killing took place and that a witness would testify that Harris told him to hide the murder weapon. Also the district attorney advised that he would show that personal items from the victim were in Harris's possession when he was arrested. Based upon this situation of the facts, defense counsel recommended to Harris that he accept the plea agreement. The trial court asked Harris repeatedly whether he understood what he was pleading guilty to and whether that was what he wanted to do, and Harris answered that he did. From this record, we affirm the trial court's assessment that Harris voluntarily and knowingly entered his guilty plea.
(3) Ineffective assistance of counsel
¶ 15. Next Harris makes a terse argument that his counsel was ineffective. He claims that his counsel failed upon numerous requests to conduct any form of investigation of the case and failed to interview witnesses.
¶ 16. In asserting an ineffective assistance of counsel claim, Harris must satisfy the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was deficient and the deficient performance prejudiced his defense. Id. at 687. This test applies to guilty pleas based upon ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
¶ 17. Harris's argument of ineffective assistance of counsel is not supported by the record. After appointment, Harris's counsel began their defense with a vigorous volley of motions. They filed the following pre-trial motions: two separate motions for discovery, an ex parte motion for funds for expert assistance in the fields of psychiatry/psychology and mitigation *907 investigation and for a fact investigator, a motion for a special venire, a motion for a continuance so that his counsel could further investigate his case, a motion to exclude admission of certain inflammatory and prejudicial matters concerning the victim, a motion to sequester jurors prior to and during the trial, a motion to exclude admission of highly gruesome and highly prejudicial color photographs of the deceased, a motion for discovery of information concerning the DNA testing performed in the case, a motion for permission to proceed ex parte on applications for funds, and a motion for a mental evaluation. Counsels' supporting briefs on these motions make up some ninety-two pages of the record.
¶ 18. Further, Harris was asked by the court at his plea hearing whether he was satisfied with the assistance he received from his counsel, and he admitted under oath that he was. There is a strong presumption of validity of statements made under oath. Mowdy v. State, 638 So.2d 738, 743 (Miss.1994).
¶ 19. More importantly, in the process of Harris's defense, his attorneys were able to secure a plea bargain which spared Harris the possibility of a sentence of deathno small victory. We find no merit to Harris's claim of ineffective assistance of counsel.
(4) Defective Indictment
¶ 20. Harris's final argument is that he should have been allowed an evidentiary hearing in order to challenge the indictment because it did not contain the underlying circumstances or facts to support the charge of capital murder and did not give an exact date of the murder.
¶ 21. Once again Harris's argument is not supported by the record. The capital murder indictment against Harris returned by the grand jury in the June 2002 term of the Wayne County Circuit Court reads in pertinent part as follows:
The Grand Jury for the State of Mississippi, . . . upon their oaths present that DERRICK CORDELL HARRIS in said County and State, on or about the 29th or 30th day of December, A.D., 2001, did wilfully, unlawfully, feloniously, and knowingly kill ISAIH BLANKS, SR., a human being, with or without a design to effect death by ISAIH BLANKS, SR., by shooting him, while the said DERRICK CORDELL HARRIS was engaged in the commission of the crime of robbery, in violation of Mississippi Code Annotated Section 97-3-191972, and contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi.
(Emphasis added).
¶ 22. Rule 7.06 of the Uniform Rules of Circuit and County Court states that the following shall be included in an indictment:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
¶ 23. Rule 7.06(5) specifically states that the failure of an indictment to state *908 the correct date when the offense was alleged to have been committed will not render the indictment insufficient. However, despite Harris's protestations, such is not the case here as the indictment clearly set the date of the offense as December 29 or 30, 2001. In his sworn petition and in his statement under oath at the plea hearing, Harris said that he killed Blanks on December 30, 2001. We find no error.
¶ 24. Also we find no merit in Harris's assertion that the indictment was defective because it failed to allege the material element of robbery to constitute the offense of capital murder. The indictment states that Harris shot Blanks while "engaged in the commission of the crime of robbery." Thus, this position is clearly without merit.
¶ 25. In his reply brief, Harris also argues that the indictment must fail because it did not include the phrase "without authority of law" which is an essential element of capital murder. He cites Edwards v. State, 737 So.2d 275 (Miss.1999). Edwards, however, dealt with amendments of an indictment which was never at issue in this case. In Turner v. State, 796 So.2d 998, 1003(¶ 20) (Miss.2001), the court reviewed the sufficiency of an indictment in a depraved heart murder charge which included the word "unlawfully" in the place of "without the authority of law." The court said that a common sense analysis must find that "unlawfully" is synonymous with the phrase "without the authority of law" Id. Harris's indictment clearly contained the word "unlawfully."
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] The record is in disagreement over the spelling of the first name of the decedent. The indictment identifies the murder victim as Isaih Blanks, Sr. At the plea hearing the victim is referred to as Isaac Blanks, Sr. During the victims impact statements, the victim's son identified himself as Isaiah Blanks, Jr. Harris does not assign the identification as error. After a thorough reading of the record, we are confident that there was no confusion by the defendant regarding the identity of the victim.
[2] The agreed sentence also provided that the life sentence would run consecutively to "any other sentence" that Harris was to serve. At the time of the murder, Harris was on probation from a ten-year sentence for a burglary conviction. As part of the plea agreement, after a revocation hearing Harris would serve his ten-year sentence for the burglary then serve his life term, being given credit for time served.