**Jarvis Ray SHELTON, Petitioner**

v.

**Ron KING, Superintendent of SMCI and Jim Hood, Attorney General, Respondents.**

**Civil Action No. 5:04cv284–DCB–MTP.**

United States District Court,
S.D. Mississippi,
Western Division.

March 12, 2008.

Jarvis Jay Shelton, Leakesville, MS, pro se.

Jerrolyn M. Owens, Office of the Attorney General, Jackson, MS, for Respondents.

### ORDER

DAVID BRAMLETTE, District Judge.

This cause comes before the Court on the Report and Recommendation [**docket entry no. 40**] of the Magistrate Judge and the petitioner's Objection [**docket entry no. 41**] thereto. Having carefully considered the Report and Recommendation, having conducted a de novo review of the

portions of the same to which the petitioner has objected in light of applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

On October 29, 2004, Jarvis Ray Shelton, petitioner herein, filed a Petition for a Writ of Habeas Corpus [docket entry no. 1] pursuant to 28 U.S.C. § 2254 wherein he urges numerous grounds for relief. On January 24, 2008, the Magistrate Judge issued his Report and Recommendation [docket entry no. 40] that Shelton's petition be dismissed with prejudice. On February 8, 2008, the petitioner filed his Objection [docket entry no. 41] to the Magistrate Judge's Report and Recommendation.

In his Objection, Shelton raises nine specific points of disagreement with the findings and conclusions of law made by the Magistrate Judge in the Report and Recommendation: 1) it was error for the respondents to include the sworn affidavit of Yazoo City Circuit Clerk Susie Bradshaw with their answer to the petition and for the Magistrate Judge to consider the same; 2) the respondents failed to forward the petitioner's supporting evidence to the district court; 3) the Magistrate Judge erred by determining certain issues were not properly raised by the petitioner on direct appeal and would now be procedurally barred from review; 4) the Magistrate Judge improperly reworded, reorganized, and rephrased the petitioner's claims; 5) the Magistrate Judge's erred in finding that the underlying indictment charging the petitioner with capital murder was proper and sufficient and that the petitioner's trial and appellate counsel were not ineffective for raising the issue of the allegedly fatally deficient indictment at trial and on appeal; 6) the Magistrate Judge did not entertain the petitioner's criminal complaint and affidavit which Shelton filed

against the respondents for their obstruction of justice; 7) the Magistrate Judge made several false statements in the Report and Recommendation; 8) the Magistrate Judge's findings and conclusions on all of the ineffective assistance of counsel claims were in error; and 9) the Magistrate Judge wrongly found that the petitioner's trial counsel had been duly appointed.

Having thoroughly conducted a de novo review of the portions of the Report and Recommendation to which the petitioner has specifically objected, the Court finds no merit to the points raised in the petitioner's Objection. Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation [**docket entry no. 40**] of the Magistrate Judge is **ADOPTED.**

**IT IS FURTHER ORDERED** that the petitioner's Objection [**docket entry no. 41**] to the Report and Recommendation is **OVERRULED.**

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

MICHAEL T. PARKER, United States Magistrate Judge.

BEFORE THE COURT is the *pro se* petition of Jarvis Jay Shelton for a writ of *habeas corpus* under 28 U.S.C. § 2254. Having considered the petition, the answer, the reply, the record of the state court proceedings and the applicable law, the undersigned is of the opinion that the petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied.

PROCEDURAL HISTORY

Following a jury trial, petitioner was convicted of one count of capital murder in the Circuit Court of Yazoo County, Missis-

sippi.[1] By Order filed April 26, 2001, petitioner was sentenced to a term of life imprisonment without parole in the custody of the Mississippi Department of Corrections. Supreme Court Record ("SCR") vol. 5, pp. 704–05. Thereafter, petitioner appealed his judgment of conviction and sentence to the Mississippi Supreme Court, assigning as error the following (as stated by petitioner):

A. Whether the trial court erred by refusing to suppress the pre-trial identification of evidence and testimony of the out-of-court show up identification and by allowing the in-court identification testimony of Molly Crow and Katie Crow.

B. Whether the trial court erred by denying Shelton's motion for continuance based upon illness of the defense attorney.

C. Whether the trial court erred by failing to grant Shelton's motion for mistrial after a prospective juror stated in voir dire that this was the second capital murder trial for Shelton.

D. Whether the trial court erred in refusing to grant Shelton's motion for mistrial based on the witness's improper comment regarding Shelton's right to testify or remain silent under Amendment V of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890.

E. Whether the court committed reversible error when it refused to grant a directed verdict

On July 31, 2003, the Mississippi Supreme Court affirmed petitioner's judgment of conviction and sentence in a written opinion. *Shelton v. State,* 853 So.2d 1171 (Miss.2003), *reh'g denied,* (Sept. 25, 2003).

On February 19, 2003, petitioner filed an "Emergency Petition to Dismiss For Being Denied Fundamental–Fairness During The Appeal Process" (hereinafter "Emergency Petition," Exhibit B to Answer) in which he raised the following issues (as stated by petitioner):

(1) Petition to dismiss petitioner's capitol crime conviction-sentence with prejudice, as a result of petitioner being denied fundamental-fairness during the appeal process, by the lower court court-reporters prejudicially failure to provide for (future) appellate purposes, the entire records of all the (recorded) proceedings that led up to petitioner's capitol-crime conviction and sentence in circuit court cause # 96–8080 Yazoo County, MS, State of MS versus Jarvis Shelton, pursuant to petitioner's designated request.

(2) Petition to dismiss petitioner's capitol crime conviction-sentence with prejudice, as a result of petitioner being denied fundamental-fairness during the appeal process, based upon the lower court's clerk prejudicially failure to docket in the record for (future) appellate purposes, certain documents and events that led up to petitioner's capitol-crime conviction and sentence in circuit court cause # 96–8080 Yazoo County, MS, State of Mississippi versus Jarvis Shelton, pursuant to petitioner's designated request.

(3) Petition to dismiss petitioner's capitol-crime conviction and sentence with prejudice, as a result of peti-

---

**1.** Petitioner was first tried on this charge in 1999, but a mistrial was declared. Both trials were held in Madison County, pursuant to an order changing venue at petitioner's request. *See* SCR vol. 1, pp. 43–45, 93–94.

tioner being denied fundamental-fairness during the appeal process, based upon the lower court clerk listing fraudulent events occurring under the representation of counsel Chokwe Lumumba in the clerk's records provided for appeal, which is misleading, and highly-prejudicial for (future) appellate purposes in petitioner's capitol-crime cause # 96–8080, Yazoo County Circuit Court, State of MS versus Jarvis Shelton, as well as a violation of the law(s) of this state.

(4) Petition to dismiss petitioner's capitol-crime conviction and sentence with prejudice, as a result of petitioner being denied fundamental fairness during the appeal process, based upon the jury-verdict and sentencing-order provided in the record for appeal (prejudicially) fraudulently allege's that petitioner were arraigned on said capitol charge, while being represented by attorney Chokwe Lumumba as counsel, which is misleading, and highly prejudicial for (future) appellate purposes, in Yazoo County Circuit Court Cause # 96–8080, State of MS versus Jarvis Shelton, as well as a violation of the law(s) of this State.

(5) Petition to dismiss petitioner's capitol-crime conviction and sentence with prejudice, as a result of petitioner being denied fundamental fairness during the appeal process, based upon a court-order provided in the appeal record relieving attorney James (Jim) Arnold Jr. as counsel of record in petitioner's capitol criminal cause, prejudicially and fraudulently alleges that said counsel were being relieved as a counsel on retainer, which is misleading, and highly-prejudicial for (future) appellate purposes, in Yazoo County Circuit Court Cause # 96–8080, State of MS versus Jarvis Shelton, as well as a violation of the law(s) of this state.

(6) Petition to dismiss petitioner's capitol-crime conviction and sentence with prejudice, and to dismiss petitioner's appellate counsels for prejudice, as a result of petitioner prejudicially receiving ineffective assistance by appellate counsels, based upon said counsels preparing petitioner's direct appeal brief upon a fraudulent and incomplete court record provided for appeal, then prejudicially submitted said brief to the MS Supreme Court for a decision, without petitioner's consent, and without considering, entertaining, or addressing petitioner's potential additional issues for review, or a (twice) timely notice from petitioner advising that there existed certain document(s) and record(s) in the trial record that were fraudulent and inaccurate, which was highly-prejudicial to petitioner, during the process of petitioner's direct appeal from a capitol-crime conviction/sentence in the Circuit Court of Yazoo County, MS, State of MS versus Jarvis Shelton, Cause # 96–8080.

(7) Petition to dismiss petitioner's capitol-crime conviction and sentence with prejudice, as a result of the lower court(s) unlawfully permitting attorney James (Jim) Arnold Jr. and attorney Waldo (Wallie) Stuckey Jr. to enter into petitioner's capitol criminal cause as being retained counsels of record, in the absence of conducting the required procedures (or any procedures) on the record to clarify-verify the legality and constitutionality of the aforesaid counsels entering into said capitol cause,.. And then unlawfully permitted said

counsels to remain as counsels of record in said cause from 9–16–96 through 6–4–98 as being a court-appointed counsels of record, at a time when said counsels were not and had not been appointed as they represented themselves to be,.. thereby resulting in petitioner being denied the required constitutionally assistance of counsel from the day of petitioner's arrest on 8/21/96 through 6/3/98, (Date petitioner retained his own counsel) after being arrested, charged, placed in custody, and denied bond on a capitol-crime charge, where the State of MS was seeking the "death penalty" against petitioner,.. which concluded in being a violation of petitioner's aforesaid constitutional rights.

According to petitioner, the "Emergency Petition" was filed in an effort to get these issues, which petitioner claimed his appellate counsel refused to raise on appeal, before the Supreme Court. Emergency Petition at 14. By Order dated July 28, 2003, the Court denied the Emergency Petition. Exhibit C to Answer.

On July 12, 2004, petitioner filed an "Application for Leave to Proceed in the Trial Court of Yazoo County, MS, a "Motion for Post–Conviction Collateral Relief," " (hereinafter "UPCCR Motion") and a "Memorandum of Law and Argument in Support of Petitioner's U.P.C.C.R. Motion" (hereinafter "UPCCR Memo") (Exhibits D & E to Answer) in the Mississippi Supreme Court, alleging the following (as stated by petitioner):

I. Petitioner were denied "fundamental-fairness" during his direct appeal of a capital-crime conviction and sentence where the State of MS had seeked the "death-penalty," as a result of the trial court's "prejudicial-failure" to include in the record for appeal (after being requested by petitioner) certain "essential" records-documents that were used in this case and stamped filed in the trial court.

II. Petitioner has recently discovered-uncovered evidence to substantiate that, during an illegal scheme to obtain public-country funds illegally, an attorney knowingly and intentionally represented petitioner fraudulently, illegally, and feloniously on petitioner's capital-crime case # 96–8080 in Yazoo County, and on petitioner's direct appeal # 97–KA–107 in Lauderdale County between 8–21–96 and on or about 5–28–98 during the same time period, resulting in a denial of the "constitutionally" required legal assistance of counsel in *both* cases during the aforestated time period, and a successful (substantial) illegal cheat upon the county of Yazoo, and an unsuccessful illegal attempt to obtain public funds from the county of Lauderdale.

III. Petitioner received ineffective assistance of trial/appellate counsels: [2]

(A) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal after being timely informed by petitioner that petitioner were denied the "constitutionally" required legal assistance of counsels from 8–21–96 through on or about 5–28–98 as a result of petitioner being afforded fraudulent and illegal retained and court-appointed assistance of counsels, which resulted in a feloniously (substantial) cheat being placed upon the treasury funds of Yazoo County, after an unsuccessful attempt upon the county of Lauderdale, during an illegal

---

**2.** Petitioner was represented by different attorneys on appeal than he was at trial.

scheme to obtain public-county funds illegally.

(B) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal after being timely informed by petitioner that petitioner's statutory and constitutional right to a fast and speedy trial were violated as a result of the extensive delay in petitioner being afforded the "constitutionally" required legal assistance of counsels after petitioner had been arrested, charged, requested a counsel, and placed in custody without bail on a capital-crime offense.

(C) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to raise in the trial court that the initial (first) counsels who represented petitioner in this case committed perjury while testifying during a motion hearing in this case.

(D) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsel were ineffective for stating in the presence of the jury that there were a previous trial in this capital-crime case.

(E) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to object to the state stating to the jury during closing arguments that there were a previous trial in this case.

(F) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by failing to sustain petitioner's objection to Officer Woods testifying about the contents of a telephone company record that were not prepared by Officer Woods.

(G) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by failing to sustain petitioner's objection to the state admitting into evidence statements given by witnesses other than the witness who the statements were admitted through.

(H) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by denying petitioner's motion to dismiss with prejudice.

(I) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by denying defendant's motion to dismiss.

(J) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by denying defendant's motion to nolle prosse indictment and dismiss criminal charges.

(K) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by denying petitioner's motion to suppress (Michael Biasello's statement).

(L) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by denying petitioner's motion to quash

indictment and challenge to composition of grand and traverse jury pools.

(M) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by denying petitioner's motion to quash indictment.

(N) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to secure a ruling on petitioner's motion to quash indictment.

(O) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by failing to issue a ruling on petitioner's motion to quash indictment after being informed by petitioner's trial counsel that petitioner will rely on the motion itself for a ruling.

(P) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to request a mistrial after petitioner's trial counsel and the prosecutor stated in the presence of the jury that there were a previous trial in this case.

(Q) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court committed prejudicial-error for failure to instruct the jury on the court's own initiative to disregard or not to consider during deliberations the statements made by petitioner's trial counsel *and* the prosecutor regard-

ing there being a previous trial in this case.

(R) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to raise during trial or in a motion for a new trial the inconsistencies in the testimony between Officer Wade Woods and Molly Crow regarding the viewing of a physical line-up held on 8–21–96.

(S) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that the trial court erred by allowing the state's jury instructions S–3, S–4, and S–5 over petitioner's objections.

(T) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to *file* and *raise* in support of a motion for a new trial certain prejudicial-errors committed during the trial of this capital-crime case.

(U) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner's trial counsels were ineffective for failure to raise in the trial court that petitioner's case should be dismissed for prosecutorial *and* judicial misconduct.

(V) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal that petitioner were tried, convicted, and sentenced on a total and fatal-defective capital-murder indictment which also subjected the trial court to be without jurisdiction

to hear and prosecute petitioner's case.

(W) Petitioner received ineffective assistance of appellate counsels for failure to raise on petitioner's direct appeal after being timely informed by petitioner that the trial court "prejudicially-failed" to include in the record for appeal certain records-documents that were used in this case and stamped filed in the trial court that were "essential" to preparation of petitioner's direct appeal in this capital-crime case where the State of MS seeked the death-penalty against petitioner.

By Order dated August 19, 2004, the Mississippi Supreme Court denied petitioner's post conviction application on the basis that he had failed "to make a substantial showing of the denial of a state or federal right pursuant to Miss.Code Ann. § 99–39–27(5)." [3] Exhibit F to Answer.

Thereafter, on November 12, 2004, petitioner filed a second post-conviction petition (the "Second UPCCR Motion") in which he raised the following two issues (as stated by petitioner):

I. There exist evidence (statements) not previously submitted by the trial court in the record for appeal that will substantiate that petitioner were afforded court-appointed assistance of counsels in this capitol-case at a time when said court-appointed assistance were fraudulent and illegal, which subjected petitioner to be denied the "constitutionally-required" legal assistance of counsel, and subjected petitioner to be unfairly denied an opportunity to present-raise this evidence on direct appeal.

II. There exist newly discovered evidence (statement) that substantiate that the trial court should have included in the record for appeal the transcript of the hearing *and* ruling on petitioner's motion to dismiss for ineffective assistance of counsel, which subjected petitioner to be unfairly denied an opportunity from raising and having the trial judge's ruling reviewed by a higher court for trial court error.

Exhibit G to Answer. By Order filed December 3, 2004, the Mississippi Supreme Court dismissed the application on the basis that it was procedurally barred as a successive writ pursuant to Miss.Code Ann. § 99–39–27(9).[4] Exhibit H to Answer.

Petitioner filed his petition for a writ of habeas corpus [1] (the "Petition") in this court on or about October 29, 2004. The grounds asserted by petitioner are as follows (as paraphrased by the court): [5]

*Ground I:* Petitioner was denied the legal assistance of counsel from 8/27/96 through 6/4/98 (when petitioner retained his own counsel), because attorneys Jim Arnold and Wallie Stuckey, Jr. fraudulently entered into the representation of petitioner with-

---

**3.** "Unless it appears from the face of the application, motion, exhibits and the prior record that the claims presented by such are not procedurally barred under Section 99–39–21 and that they further present a substantial showing of the denial of a state or federal right, the court shall by appropriate order deny the application...."

**4.** "The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this article."

**5.** Petitioner did not number the grounds in the Petition. For ease of reference, the court has numbered them in an effort to follow the order of the grounds as set forth in the Petition.

out being officially appointed by the trial court as counsel of record.

*Ground II:* Petitioner's conviction was obtained by the use of perjured testimony by Jim Arnold and Wallie Stuckey, Jr. at a motion hearing that they were appointed counsel when, in fact, they were not.

*Ground III:* The trial court erred by refusing to suppress the pre-trial identification evidence and testimony of the out-of-court show up identification and by allowing the in-court identification testimony of Molly Crow and Katie Crow.

*Ground IV:* The trial court erred in denying petitioner's motion for a continuance based upon illness of his defense attorney.

*Ground V:* The trial court erred in failing to grant petitioner's motion for a mistrial after a prospective juror stated in voir dire that this was petitioner's second capital murder trial.

*Ground VI:* The trial court erred in refusing to grant petitioner's motion for a mistrial based on a witness' improper comment regarding petitioner's right to testify or remain silent.

*Ground VII:* The trial court committed reversible error when it refused to grant a directed verdict.

*Ground VIII:* Petitioner was denied fundamental fairness during the appeal process by the failure of the court reporter to provide transcripts of all proceedings leading up to his conviction.

*Ground IX:* Petitioner was denied fundamental fairness during the appeal process due to the failure of the Yazoo County Circuit Clerk to include in the record certain documents leading up to his conviction.

*Ground X:* Petitioner was denied fundamental fairness during the appeal pro-cess based upon the Yazoo County Circuit Clerk listing certain events occurring under the representation of Chokwe Lumumba that should have been attributed to defense attorneys Jim Arnold and Wallie Stuckey, Jr., thus misleading the appellate court.

*Ground XI:* Petitioner was denied fundamental fairness during the appeal process based upon the jury verdict and sentencing order provided in the record on appeal which fraudulently alleges that petitioner was arraigned on the capital charge while represented by Chokwe Lumumba.

*Ground XII:* Petitioner was denied fundamental fairness during the appeal process due to the entry of an order by the trial court permitting attorney Jim Arnold to withdraw as the attorney of record when Arnold was never officially appointed or retained to represent petitioner, thus misleading the appellate court.

*Ground XIII:* Petitioner received ineffective assistance of counsel due to appellate counsel knowingly preparing a brief based on an incomplete and inaccurate trial record, and failing to consult with petitioner regarding potential additional issues for appeal prior to filing the brief.

*Ground XIV:* Petitioner received ineffective assistance of counsel as a result of the lower court unlawfully permitting attorneys Jim Arnold, Jr. and Wallie Stuckey, Jr. to enter into petitioner's case as retained counsel of record without conducting the required procedures on the record, and then allowing said attorneys to remain as counsel of record from 9/16/96 through 6/4/98 when they were not and had not been appointed as they represented themselves to be.

*Ground XV:* Petitioner was denied fundamental fairness during the appeal process as a result of the trial court's failure to include in the record for appeal certain records and documents that were used in his case.

*Ground XVI:* Petitioner was denied legal assistance of counsel by an attorney knowingly and intentionally representing him fraudulently between 8/21/96 and 5/28/98.

*Ground XVII:* Petitioner received ineffective assistance of counsel by appellate counsel's failure to raise the following issues on direct appeal:

A. That petitioner was denied effective assistance of counsel by an attorney knowingly and intentionally representing him fraudulently between 8/21/96 and 5/28/98;

B. That petitioner was denied his statutory and constitutional rights to a speedy trial;

C. That petitioner's trial counsel were ineffective for failing to raise in the trial court that petitioner's initial counsel committed perjury while testifying during a motion hearing;

D. That petitioner's trial counsel were ineffective for stating in the presence of the jury that there had been a previous trial in this case;

E. That petitioner's trial attorneys were ineffective for failing to object to the prosecution's statement to the jury during closing arguments -that there was previous trial in this case;

F. That the trial court erred by failing to sustain petitioner's objection to testimony by Officer Woods regarding the contents of telephone records that were not prepared by Officer Woods;

G. That the trial court erred by failing to sustain petitioner's objection to the state admitting statements into evidence through a witness who did not make them;

H. That the trial court erred by denying petitioner's motion to dismiss with prejudice;

I. That the trial court erred by denying petitioner's motion to dismiss;

J. That the trial court erred by denying petitioner's motion to nolle prosse indictment and dismiss criminal charges;

K. That the trial court erred by denying petitioner's motion to suppress (Michael Biasello's statement);

L. That the trial court erred by denying petitioner's motion to quash indictment and challenge composition of grand and traverse jury pools;

M. That the trial court erred by denying petitioner's motion to quash indictment;

N. That petitioner's trial counsel were ineffective for failing to secure a ruling on petitioner's motion to quash indictment;

O. That the trial court erred by failing to issue a ruling on petitioner's motion to quash indictment;

P. That petitioner's trial counsel were ineffective in failing to request a mistrial after petitioner's trial counsel and the prosecutor stated in the presence of the jury that there had been a previous trial in this case;

Q. That the trial court erred in failing to instruct the jury to disregard statements made by petitioner's trial counsel and the prosecutor regarding petitioner's previous trial;

R. That petitioner's trial counsel were ineffective in failing to raise during trial or in a motion for a new trial the inconsistencies in the testimony between officer Wade Woods and Mol-

ly Crow regarding the viewing of a physical line-up held on 8/21/96;

S. That the trial court erred by allowing the state's jury instructions S–3, S–4 and S–5 over petitioner's objections;

T. That petitioner's trial counsel were ineffective for failing to file and raise in support of a motion for a new trial certain prejudicial errors committed during trial;

U. That petitioner's trial counsel were ineffective for failing to raise in the trial court that petitioner's case should be dismissed for prosecutorial and judicial misconduct;

V. That petitioner was tried, convicted and sentenced on a defective indictment which also divested the court of jurisdiction to try the case; and

W. That the trial court failed to include in the record for appeal certain documents used in this case that were "essential" to petitioner's appeal.

*Ground VIII:* There exist evidence (statements) not previously submitted by the trial court in the record for appeal that will substantiate that petitioner were afforded court-appointed assistance of counsels in this capitol-case at a time when said court-appointed assistance were fraudulent and illegal, which subjected petitioner to be denied the "constitutionally-required" legal assistance of counsel, and subjected petitioner to be unfairly denied an opportunity to present-raise this evidence on direct appeal.

*Ground IX:* There exist newly discovered evidence (statement) that substantiate that the trial court should have included in the record for appeal the

transcript of the hearing *and* ruling on petitioner's motion to dismiss for ineffective assistance of counsel, which subjected petitioner to be unfairly denied an opportunity from raising and having the trial judge's ruling reviewed by a higher court for trial court error.[6]

## THE STANDARD OF REVIEW

As the Petition was filed after the effective date of The Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA and case law interpreting it provide the standards under which the Petition must be evaluated. *See Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir.2002), *cert. denied,* 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003). As an initial matter, exhaustion of state remedies is a mandatory prerequisite to federal habeas relief under 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State;

or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right

---

**6.** The court notes that it is unclear whether petitioner is, in fact, also asserting Grounds Eighteen and Nineteen, which are the two grounds contained in the Second UPCCR Mo-

tion. Out of an abundance of caution, the court will assume that these grounds are being asserted by petitioner.

under the law of the State to raise, by any available procedure, the question presented.

To satisfy the exhaustion requirement, the petitioner must first present his claims to the highest state court in a procedurally proper manner so that it is given a fair opportunity to consider and pass upon challenges to a conviction, before those issues come to federal court for habeas corpus review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). This is so because state courts, "like federal courts, are obliged to enforce federal law." *Id.* at 844, 119 S.Ct. 1728. Thus, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* Exhaustion results from the petitioner's pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings. *See Orman v. Cain,* 228 F.3d 616, 619–20 & n. 6 (5th Cir.2000).

Along with a determination of whether the petitioner has exhausted state court remedies, this court must also determine whether the state court has decided the asserted claim on the merits, thus barring habeas relief except under very limited circumstances. AEDPA provides: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

 (1) resulted in a decision that was contrary to, or involved an unreason-

able application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[7]

Federal courts review pure questions of law, as well as mixed questions of law and fact, under subsection (d)(1). *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir.2000); *Corwin v. Johnson,* 150 F.3d 467, 471 (5th Cir.1998). The "unreasonable application" inquiry is based on an objective standard, and for purposes of the (d)(1) analysis, "unreasonable" does not equate with "incorrect." *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir.2004). Rather, the application of clearly-established precedent must be both incorrect *and* unreasonable for federal habeas relief to be warranted. *Id.*

Pure questions of fact are reviewed under subsection (d)(2). *Corwin,* 150 F.3d at 471. Determination of a factual issue made by a state court is entitled to a presumption of correctness which the petitioner has the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Schriro v. Landrigan,* —— U.S. ——, 127 S.Ct. 1933, 1939–40, 167 L.Ed.2d 836 (2007).

It is against this backdrop that petitioner's claims must be reviewed—with the added caveat that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicat-

---

**7.** The court agrees with respondents that Grounds One, Three, Five, Six, Eight, Fourteen, Fifteen, Sixteen and Seventeen were exhausted and decided on their merits. As dis- cussed *infra,* however, Grounds Two, Four, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Eighteen and Nineteen were not exhausted and have been procedurally defaulted.

ed." *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir.1986); *see also Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir.1981). "It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode,* 464 U.S. 78, 83–84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (citations omitted). Thus, AEDPA provides that the court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). A state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir.1981) (citations omitted).

*The Procedurally Barred Claims*

■ Respondents contend that Grounds Two, Nine, Ten, Eleven, Twelve and Thirteen were not presented to Mississippi's highest court in a procedurally proper manner and, therefore, they are barred from review. In addition, respondents contend that Grounds Four, Seven, Eighteen and Nineteen are procedurally barred from review here because they were held to be procedurally barred from review by the Mississippi Supreme Court.

In Ground Two, petitioner asserts that his conviction was obtained through the use of perjured testimony by his first pair of attorneys, Jim Arnold and Wallie Stuckey, Jr., during a motion hearing at which they stated that they were appointed petitioner's counsel when, in fact, they were not. *See* Petition at 5. Although this issue was presented to the Mississippi Supreme Court in petitioner's UPCCR Motion in the context of an ineffective assistance of appellate counsel claim, in which petitioner asserted that his appellate counsel erred by failing to raise on direct appeal that his trial counsel were ineffective for failing to raise in the trial court the allegedly false testimony (*see* UPCCR Motion & Memo at Ground III(C)), petitioner never presented Ground Two to the appellate court as a substantive claim that the allegedly false testimony led to his conviction. Thus, this claim was not exhausted. It is not enough to avoid the procedural bar that a "somewhat similar state-law claim was made." *Bagwell v. Dretke,* 372 F.3d 748, 755 (5th Cir.2004), *cert. denied,* 543 U.S. 989, 125 S.Ct. 498, 160 L.Ed.2d 374 (2004) (citations omitted); *see also Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997) (holding claim unexhausted even where it was related to an exhausted claim and even where "all the facts necessary to support the [unexhausted] claim were before the state courts.").

Grounds Nine,[8] Ten, Eleven, Twelve and Thirteen were raised in the Emergency Petition, which was filed *pro se* while petitioner's direct appeal (filed by counsel) was pending in the Mississippi Supreme Court. *See* Exhibit B to Answer. By Order filed July 21, 2003, the Supreme Court denied the petition *in toto. See* Exhibit C to Answer. The issues raised in the Emergency Petition were not addressed in the Court's appellate opinion on petitioner's direct appeal, demonstrating that the Court did not consider those claims to be properly before

---

**8.** The allegations in Ground Nine are very similar to the allegations in Grounds Eight and Fifteen, which are addressed *infra* on their merits. However, some of the allegations in Ground Nine concerning the omissions of certain documents are not included in Grounds Eight or Fifteen. *See* Emergency Petition at 16–29; UPCCR Motion & Memo at Ground I. Thus, to the extent that Ground Nine differs from Grounds Eight and Fifteen, it has not been properly presented to the state's highest court for review.

it. *See Shelton v. State*, 853 So.2d 1171 (Miss.2003). Further, pursuant to Rule 28(c) of the Mississippi Rules of Appellate Procedure, the initial appellant's brief and a reply brief are the only briefs that may be filed by the appellant without leave of court. The record does not reflect that petitioner sought leave of court prior to filing the Emergency Petition and, therefore, it was not properly presented to the appellate court. Nor did petitioner include these grounds in his UPCCR Motion. Thus, none of these issues were properly presented to the state courts for review and, as exhaustion would now be futile,[9] these claims are also procedurally barred from review. *See O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728 (holding that failure to present claim to state's highest court in timely manner results in procedural default of those claims); *see also Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995) (stating that "[w]hen … state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims.").

Where a habeas claim is procedurally barred, it may be considered on the merits by a federal court under two narrow exceptions: "cause and actual prejudice" or "fundamental miscarriage of justice." *See Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir.2004), *cert. denied*, 543 U.S. 989, 125 S.Ct. 498, 160 L.Ed.2d 374 (2004); *see also Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (making this rule "explicit").

To prove cause sufficient to excuse default, petitioner must establish that some external impediment prevented him from raising the defaulted claims: " 'Cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. Examples of external factors include "interference by officials" and "a showing that the factual or legal basis for a claim was not reasonably available" to petitioner. *McCleskey v. Zant*, 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Petitioner does not provide a reason as to why these claims were not raised in either his direct appeal or his UPCCR Motion. Petitioner may be arguing that the reason these claims were not raised was because of ineffective assistance of counsel. As a general matter, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' " *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546 (citations omitted). However, where attorney error constitutes ineffective assistance of counsel under the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and is therefore an "independent constitutional violation," it is "cause" sufficient to excuse default.[10] *Id.* at 754, 755, 104 S.Ct. 2052.

---

**9.** The time for filing a motion for post conviction relief has passed. The Mississippi Supreme Court denied rehearing on September 25, 2003. Therefore, petitioner's motion for postconviction relief was due on September 25, 2007—three years after his conviction became final. *See* Miss.Code Ann. § 99–39–5 (providing that motions for post-conviction relief must be made within three years after the time in which petitioner's direct appeal was ruled on). Moreover, another motion for post-conviction relief clearly would be barred by Miss.Code Ann. § 99–39–27(9): "The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this article."

**10.** The *Strickland* test applies to the performance of appellate counsel, as well as to trial counsel. *See Evitts v. Lucey*, 469 U.S. 387, 397–99, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985);

In *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the U.S. Supreme Court held that before a claim of ineffective assistance of counsel can be used to establish cause to excuse a procedural default, it must be exhausted— *i.e.*, it must be presented as an independent Sixth Amendment claim to the highest state court in a procedurally proper manner. The Court reaffirmed this holding in *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

In this case, although petitioner raised numerous claims of ineffective assistance of counsel in his UPCCR Motion, he did not raise and discuss these precise claims. Additionally, petitioner no longer has the ability to exhaust these ineffective assistance of counsel claims and, therefore, they are procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728; *Sones*, 61 F.3d at 416. Accordingly, petitioner must satisfy the "cause and prejudice" standard with respect to these ineffective assistance of counsel claims themselves. *Edwards*, 529 U.S. at 450–51, 120 S.Ct. 1587.

Petitioner does not give a reason for why he did not raise these ineffective assistance of counsel claims in his *pro se* UPCCR Motion. Thus, as petitioner has failed to show cause, this court "need not consider whether there is actual prejudice." *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

■ In addition, petitioner cannot establish that failure of this court to consider any of these claims would result in a "fundamental miscarriage of justice." The fundamental miscarriage of justice exception is even more circumscribed than the cause and prejudice exception and is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (*citing Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995)). To meet this exception, petitioner must offer "new, reliable evidence that was not presented at trial" and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence," [11] *Id.* (citations omitted); *see also Schlup v. Delo*, 513 U.S. 298, 324, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner has not provided this court with any new evidence bearing on his innocence that was not presented at trial, nor has he claimed "actual innocence." Accordingly, these claims are procedurally barred from review.

Grounds Four and Seven were raised in petitioner's direct appeal and held to be procedurally barred by the Mississippi Supreme Court. With respect to Ground Four, the Court held "that when a denial of a continuance is not included as an assignment of error in a motion for new trial, the issue is not appropriate for appellate review." [12] *See Shelton*, 853 So.2d at 1182. As for Ground Seven, the Court found that petitioner had waived his appeal of the trial court's denial of a directed verdict when he chose to proceed with his case after the state had rested, and by his

---

*Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir.1998).

11. Such evidence includes "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman,* 188 F.3d at 644.

12. The Supreme Court noted (and the record reflects) that a motion for new trial was not filed in the instant case. *See Shelton,* 853 So.2d at 1182.

failure to make a motion for a judgment notwithstanding the verdict or for a new trial. *Id.* at 1186. Grounds Eighteen and Nineteen were set forth in petitioner's Second Petition, which the Mississippi Supreme Court held was "procedurally barred as a successive writ and should be dismissed" pursuant to Miss.Code Ann. § 99–39–27(9). *See* Exhibit H to Answer.

■■■ If "a state court declines to hear a prisoner's ... claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment," *Sayre v. Anderson,* 238 F.3d 631, 634 (5th Cir.2001). When, as in this case, the state court "clearly and expressly states that its judgment rests on a state procedural bar, a presumption arises that the state court decision rests on independent and adequate state law grounds." *Pitts v. Anderson,* 122 F.3d 275, 279 (5th Cir.1997). The petitioner may overcome this presumption by establishing that "the state did not strictly or regularly follow a procedural bar around the time of his direct appeal" and that "the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir.1997). As petitioner has made no such assertions, much less the requisite showing that Mississippi did not strictly or regularly follow this procedural bar, this court cannot do other than conclude that petitioner's failure to comply with Mississippi's procedural rules acted as independent and adequate grounds for the Mississippi Supreme Court's decision and precludes habeas consideration of the barred claims.[13] Moreover, although—as discussed *supra*—the court may review defaulted claims if the petitioner can meet either the "cause and prejudice" or "fundamental miscarriage of justice" tests, petitioner has neither claimed nor shown that either exception applies with respect to these claims. Accordingly, the court is barred from reviewing these claims.

### Claims Considered on Their Merits

#### Grounds One, Fourteen and Sixteen [14]

■■ In Ground One, petitioner claims that he was denied the assistance of counsel from 8/27/96 through 6/4/98 (when he retained his own counsel), because attorneys Jim Arnold and Wallie Stuckey, Jr. fraudulently entered into their representation of him without being officially appointed by the trial court as counsel of record. Petition at 5; *see also* Emergency Petition at 41–45. In Ground Sixteen, petitioner claims that he was denied legal assistance of counsel, for the same reason, from 8/21/96 through 5/28/98. Petition at 13; *see also* UPCCR Motion at Ground n. In Ground Fourteen, petitioner claims that he was denied effective assistance of counsel as a result of the lower court unlawfully permitting Arnold and Stuckey to enter into petitioner's case as retained counsel of record, and allowing them to remain as counsel of record, when they had not been appointed. Petition at 11–12; *see also* Emergency Petition at 41–45.

---

**13.** The court notes that with respect to Grounds Four and Seven, the Mississippi Supreme Court held that notwithstanding the procedural bar, the claims failed on their merits. *Shelton,* 853 So.2d at 1182, 1186–87. However, even where alternative holdings are provided, "including a decision denying the claim on its merits ... [i]t is clear in this Circuit that alternative rulings do not operate to vitiate the validity of a procedural bar that constitutes the primary holding." *Corwin v. Johnson,* 150 F.3d 467, 473 (5th Cir.1998).

**14.** These grounds will be addressed together, as they are very similar.

As noted by respondents, petitioner presents no evidence to support these allegations. It is true that there is no written order in the record appointing Arnold and Stuckey as counsel of record. However, respondents have provided an affidavit from Susie Bradshaw, the Circuit Clerk of Yazoo County, who avers that as a matter of general practice, the Circuit Court of Yazoo County does not enter written orders appointing counsel in criminal cases, and certifies that Arnold and Stuckey were appointed to represent petitioner on the capital murder charge. Exhibit J to Answer. In addition, there are numerous pre-trial motions in the record filed by Arnold and Stuckey on petitioner's behalf during this time period, including motions to suppress, motion for a change of venue, motion for a psychiatric evaluation and discovery-related motions. *See, e.g.,* SCR vol. 1, pp. 21–24, 27–29, 34–35, 38–39, 43–45, 47–48, 66–70, 90–92. Moreover, in a letter to the court dated August 15, 1997, petitioner referred to Arnold and Stuckey as "my state appointed lawyers" and requested (for various reasons) that they be dismissed from his representation, which belies petitioner's contention that they were not, in fact, appointed to represent him.[15] *See id.* at 58. The record also reflects that, at petitioner's request, Arnold made a motion to withdraw from his representation of petitioner, which was granted by the trial court on July 2, 1998. *Id.* at 107–09. Such a motion would not have been necessary had Arnold not been appointed as petitioner's counsel in the first place.

In light of the foregoing, the court finds that this claim has no merit and, therefore, habeas relief should be denied.

*Ground Three*

■ In Ground Three, petitioner claims that the trial court erred by refusing to suppress the pre-trial identification evidence and by allowing the in-court identification testimony of Molly Crow and Katie Crow (the victim's daughters), because their identification was unreliable. In addition, petitioner claims that he was not represented by counsel at the physical lineup when he was identified by Molly and Katie Crow. Petition at 8; *see also Shelton,* 853 So.2d at 1175; Brief of Appellant on direct appeal, in "Briefs and Other Pleadings" volume of SCR.

On January 11, 1999, petitioner's attorneys moved to suppress as evidence the testimony of any witness as to pre-trial identifications of petitioner and to prohibit any in-court identification by the witnesses. On January 21 and January 25, the court conducted a lengthy hearing on this motion, at which Katie and Molly Crow, as well as several other witnesses, testified. By Order dated January 25, 1999, the court denied the motion to suppress, finding: "That the defendant was identified by the witnesses in a lineup. The Court finds no evidence that the Identification was made due to improper suggestion by law enforcement or others to the witnesses identifying the Defendant." SCR vol. 4, pp. 474–76, 552; SCR vols. 6–9, pp. 60–268, 281–482.

■ In *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the U.S. Supreme Court set forth the factors to be used in evaluating the likelihood of misidentification, even where the confrontation procedure was suggestive:[16] 1) the opportunity of the witness to

---

**15.** Indeed, one of petitioner's subsequent attorneys, Chokwe Lumumba, stated in a response to a motion that "[t]he court had appointed the honorable Jim Arnold and Waldo

S. Stuckey Jr. to represent the defendant." SCR vol. 1, p. 110.

**16.** To the extent that petitioner is arguing that the photographic or live lineups were unduly

view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation.

With respect to the first factor, at the suppression hearing Molly and Katie Crow each testified that they had the opportunity to see petitioner twice on the day their mother was killed—the first time was approximately two hours before their mother was killed when petitioner was browsing in their mother's store, and the second time was just before discovering their mother's body on the floor of the store, when they saw petitioner exit the store carrying their mother's purse and money bag. Katie Crow testified that although she only looked at petitioner for a short period of time, she "looked at him well enough to—I mean, I didn't glance and look away." She explained that she paid more attention to petitioner than she otherwise would have, because her mother had told her and Molly that he was making her nervous and she did not want to be alone with him in the store. Molly also testified that while petitioner was in the store, she was looking at him "every chance" she had, because her mother had said she was suspicious of him. SCR vols. 6–7, pp. 65–66, 69–73, 105–07, 125–26, 128, 133–34, 136–37, 150, 154, 163.

With respect to the accuracy of their description, Katie testified that she initially told the police the perpetrator was black, fairly skinny, about five feet, six inches tall, with a beard, acne and pockmarks on his face, approximately 36 years old, and wearing a dark plaid shirt and tan blue jeans. Molly told the police that the perpetrator had facial hair, a scarred face, was wearing a white cap, and was in his 30's. At the suppression hearing, Molly testified that she saw acne marks on petitioner's face. Wade Woods, the Assistant Chief of Police for Yazoo City at the time, testified at the suppression hearing that Katie and Molly's description of the perpetrator was similar to the description given by Tommy and Joseph Brown. The Brown brothers identified petitioner as the man who was hanging around their work site just before the murder and whom they saw walking in the direction of the scene of the murder, which was approximately eighty yards from their worksite. Chief Woods also testified that the height estimates from various witnesses were all in the range of five feet, six inches to five feet, eleven inches tall. Mary Wilson, a witness, told police that the perpetrator was five feet, seven inches tall. She also gave a written statement that petitioner looked like the person she had seen at the store, and she picked his photograph out of the photo spread, as well as positively identifying him in the physical lineup. Mary Carter, another witness, testified that she told police the perpetrator was a black male, between five feet, six inches and five feet, eight inches tall, and that he had "some hair on his face." She also called the police the day after the lineup

suggestive, petitioner has not provided to this court any facts or argument to support such a claim. "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir.1982) (citations omitted). Nor did the Mississippi Supreme Court, in its analysis of petitioner's claim that the identifications were unreliable, address any facts concerning the alleged suggestiveness of the

lineups. *See Shelton,* 853 So.2d at 1175–81. Accordingly, any claim that the lineups were unduly suggestive has not been exhausted and is not properly before this court. *See Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997) (holding claim unexhausted even where it was related to an exhausted claim and even where "all the facts necessary to support the [unexhausted] claim were before the state courts.").

(when she had been unable to identify anyone) and told them that it was petitioner. SCR vols. 6–8, pp. 74–79, 97–98, 129–30, 132, 155, 157, 177, 199, 241–47, 343–44, 367, 381–436.

With respect to the fourth factor, the Crow girls expressed a high level of certainty about their identification of petitioner. Katie testified that at the first lineup, on August 18, 1999 (two days after the crime), she picked out the man she thought looked "most like" the perpetrator, but said that she could not make a positive identification. She was also shown pictures of various suspects, and she picked out some people, including petitioner, who looked " "most like" the perpetrator, but she did not make a positive identification." At the second lineup, the next day, Katie did not pick out anyone. However, at the third and final lineup, on August 21, 1999, Katie picked out petitioner as the perpetrator. Katie said she had no doubts when she picked out petitioner from that final lineup. She was asked why she had not picked out petitioner from the photograph, and she explained that "seeing somebody in person and seeing them in a photograph is different," and that she wanted to be sure about whom she picked. SCR vol. 6, pp. 83–90, 108–14.

Molly also testified that she had viewed three lineups. At the first lineup, on August 18, she picked out someone who looked like the perpetrator, but did not positively identify him. At the second lineup, on August 19, she did not pick out anyone as looking like the perpetrator. She testified that she was also shown many photographs of suspects, but that she did not positively identify anyone, although she did pick out petitioner and say that he looked familiar. Molly testified that she was positive at the time of the lineup, and positive at the suppression hearing, that she had identified the right

man. Katie and Molly both unequivocally identified petitioner at the suppression hearing as the person they had seen in their mother's store that day, and the person they had seen leaving the store carrying her purse. SCR vols. 6–7, pp. 107–08, 120, 123–24, 154–55, 159, 161–62, 164–65, 169.

As for the fifth factor, the record reflects that both girls positively identified petitioner from a physical lineup five days after the murder. SCR vols. 6–7, pp. 108, 162–165, 242.

On petitioner's direct appeal, the Mississippi Supreme Court conducted a *Biggers* analysis, ultimately concluding as follows:

> All of the five *Biggers* factors favor admissibility in this case. Both girls saw Shelton during their two visits to their mother's store on August 16, 1996. Just moments after seeing Shelton leaving the store with their mother's purse and money bag. Molly found her mother injured and bleeding on the floor of the store. In addition, both girls gave testimony that their mother was concerned about the man in the store; and therefore, the girls paid particular attention to the man and looked at him. Further, both girls stated that the man who left the store at 5:00 p.m. was the same person who had been in the store earlier that day. Both girls were positive that they had identified the correct man at the lineup as the person that had been in their mother's store. Finally, the girls arrived at the store as Shelton was leaving, and within five days of the injury and subsequent death of their mother, the girls identified Shelton in a lineup. Looking at the totality of the circumstances, substantial and credible evidence supported the trial court's ruling to admit the evidence. We find

that the testimony was sufficient for the identification to be admissible without any likelihood of misidentification or irreparable identification. This issue is without merit.

*Id.* at 1180. Based on the record in this case, this court finds that the Mississippi Supreme Court's decision on this issue was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.

As for petitioner's contention that he was not represented by counsel at the lineup, this claim is completely without merit. Chief Woods testified that attorney Jim Arnold was present during the lineup, identified himself as counsel of record, and signed the identification sheets as petitioner's attorney. SCR vol. 8, pp. 338–39. Petitioner raised this issue on direct appeal, and the Mississippi Supreme Court determined that "Shelton is mistaken in his assertion that he was not represented by counsel at the time of the lineup." *Shelton,* 853 So.2d at 1179. Based on the record, this court finds that this was not an unreasonable determination of the facts.[17]

For the foregoing reasons, this claim for habeas relief should be denied.

*Ground Five*

■ In Ground Five, petitioner claims that the trial court erred in failing to grant petitioner's motion for a mistrial after a prospective juror stated during voir dire that this was petitioner's second capital murder trial.[18] The focus of this claim appears to be on prospective juror Makeba Wilson. Petition at 8; *see also Shelton,* 853 So.2d at 1183; Brief of Appellant on direct appeal, in "Briefs and Other Pleadings" volume of SCR

The record reflects that during individual voir dire (death penalty qualification), the following exchange occurred between the State and Ms. Wilson:

State: Yeah. We probably all would agree on that. Now, first to explain something about the system, and the Judge just explained to you that if we did get to a second phase, that you have to listen to the instructions and weigh things. Now, you have said your beliefs here, if we do get to the second phase, if you're selected to sit on this jury and we get to a second phase, that will mean that you, in your mind, beyond a reasonable doubt, have found Mr. Shelton guilty of murder in which he's accused of. That will be the first phase. I'm saying if you found that. If you found that, then that will be the murder. I mean that would be what you're going in on. So knowing that and what opinion you gave us here, would you go into the

17. In his reply, petitioner argues that although he may have had the assistance of counsel at the lineup, he did not receive the "constitutionally-required legal assistance of counsel" to which he was entitled. Reply at 22–23. This appears to be related to the claim which permeates his Petition—that Mr. Arnold was never actually retained or appointed to represent him. As has been discussed *supra* with respect to Grounds One, Fourteen and Sixteen, this claim has no merit.

18. Rule 3.12 of the Uniform Circuit and County Court Rules states: "Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case." In addition, "[u]pon motion of a party or its own motion, the court may declare a mistrial if: 1. The trial cannot proceed in conformity with law; or 2. It appears there is no reasonable probability of the jury's agreement upon a verdict."

penalty phase saying, "Well, he should be put to death?"

A. Well, no I wouldn't. I mean just, well, but, well, I'm going to say this right here: I've heard some people say up in here that he had a trial before, and it was a hung jury, so I mean I can't say that if he's going to be guilty or not guilty.

Q. Okay. Well, would that fact enter your mind in any way as far as a trial that you heard that he had a trial before?

A. No, it ain't going to affect me at all. I mean it's just something I heard. I mean it wouldn't affect my decision if I'm on the jury.

SCR vol. 13, pp. 1091–92.

Later during individual voir dire, Wilson was questioned by defense counsel, in part, as follows:

Q: And, now, I would request permission from the court to inquire as to what is the source of the statement that there was a hung jury.

Court: Okay, you may.

Q: Ms. Wilson, I thank you for raising that with us that someone had said there was a hung jury; right?

A: Yes.

Q: Where did you hear that at?

A: You—the woman, I don't even know her name, she was Juror No. 1,[19] and that's where I heard it at. Because that's when I was sitting over there when we first started, and that's where I heard it.

Q: Before the Judge had a chance to say anything to you?

A: Yes. Like I said, that's just hearsay. That's not going to affect my decision if I'm on the jury.

Q: And I believe that. And you're going to set it aside; is that correct?

A: Yes, I can.

\* \* \*

Q: Did you hear when she said it, did she say it so that other jurors could hear it?

A: No. Well, it was like the guy was next to me, the guy that just left out of here, and he heard it, and the one that's coming in next, she heard it. I don't—I think her name is Donna. And I think that was it. She was saying that low so that only two people could hear it.

*Id.* at 1097.

Shortly thereafter, defense counsel for petitioner requested a mistrial, stating the following:

However, I'm at this time, going to move for a mistrial because of the statements made by the lady in the audience during the course of our voir dire. I think that she has and we've had several jurors come in and talk about it. I think she has what's the word vitiated this panel to the point, contaminated this panel, to the point that I think that she has irreparably injured this defendant's changes of getting a fair trial. That being the case, I would move for a mistrial and ask that all jurors be stricken.

*Id.* at 1100. Here, defense counsel appeared to have been referring to two references to petitioner's previous jury made by prospective juror Stephanie Pruitt during voir dire in front of the other prospective jurors (and not to the statements made by Makeba Wilson). First, Ms. Pruitt said:

vols. 11–13, pp. 817, 914–15, 1100.

---

**19.** Juror No. 1 was Sharon Lennette Wallace. Ms. Wallace was excused for cause. SCR

"How can I be guaranteed there's not going to be somebody on the jury with me that is paid to hang the jury again? ... "I don't want to be a part of a legal loophole that is looking for a loophole to set a murderer free." " SCR vol. 11, p. 761. Later on, Ms. Pruitt stated: "I'm just, the things that I have known about this brings to mind that question in my mind is why are we here for a second trial." [20] *Id.* at 763. Ms. Pruitt was excused for cause, upon agreement of the parties. *Id.* at 853.

In denying petitioner's motion for a mistrial, the trial court ruled:

> The motion for mistrial is denied although there was a juror who made the statement that this was the second trial. But each of the members that have been in the panel that has made reference to that, they have all stated that it would not have any impact on their ability to sit and render a fair and impartial judgment in this case.

However, the Court stated that it would inquire as to whether any other members in the panel had been affected by the statements about petitioner's previous trial. *Id.* at 1101–03. For the remainder of individual voir dire, the court inquired of each potential juror whether it had heard anything from anyone else in the panel that would have an effect on them. *See* SCR vols. 13–20, pp. 1103–2244.

Before the parties exercised their peremptory challenges, the court stated:

> The question is whether or not the statement made by Ms. Pruitt warrants additional challenges. It appears that there was a number of jurors who openly and candidly told the Court that they heard the statement and most of them went directly to the point of saying that they remember it was the incident about the second trial that they remember most from her statement. And they did say that they wouldn't let that bother them and it wouldn't enter into their ability to make a decision in this case. But because we have such a large number of people who remembered that, the Court will grant [an] additional peremptory challenge to each side, maybe one challenge per side. Okay? [21]

Defense counsel indicated its agreement with that decision. SCR vol. 21, pp. 2254–56.

As noted by the Mississippi Supreme Court, none of the twelve jurors chosen to serve on the jury expressed any misgivings that this was petitioner's second trial, nor did they indicate that this information would have an affect on their ability to be impartial.[22] The defense did not request

---

**20.** A little later during voir dire, Ms. Pruitt was questioned at the bench about how she had learned about the first trial, and she explained that she had heard something the previous day, probably from someone else on the jury panel (she did not know who) talking about it. SCR vol. 11, pp. 851–53.

**21.** Mississippi law provides that in cases where the punishment may be death or life imprisonment, the prosecution and the defendant shall each have twelve peremptory challenges for selecting the twelve regular jurors. *See* Rule 10.01 of the Uniform Circuit and County Court Rules (the "UCCCR"). That rule further provides that the court may, in its discretion, direct that alternate jurors be se-

lected—and in death penalty cases, the number of peremptory challenges shall equal the number of alternate jurors being selected. *Id.* Thus, petitioner and the state were each entitled to fourteen strikes. Because the court gave each side an additional strike, they each had a total of fifteen strikes. *See* SCR vol. 21, pp. 2294, 2301–02.

**22.** The only juror who was not questioned specifically about this issue was Jessie Porter, because he was questioned before the issue came up during Wilson's individual voir dire. However, Porter indicated during his voir dire that he could be fair. *See* SCR vol. 12, pp. 1032–37. Moreover, petitioner has not raised an issue with respect to Porter.

that any of these 12 jurors be stricken for cause on the ground that they knew about the second trial. *See Shelton,* 853 So.2d at 1184; *see also* SCR vols. 12–21, pp. 1091–92, 1096–98, 1116–17, 1183–85, 1194, 1220–21, 1226, 1253, 1261–62, 1375, 1382, 1558–59, 1572, 1768, 1782–84, 1788, 1791, 1801–02, 2031–32, 2038, 2098, 2107–08, 2302–03. Ms. Pruitt was excused for cause. Moreover, the defense did not make a peremptory challenge against Ms. Wilson; indeed, Wilson was ultimately selected as a juror on this case. *See Shelton,* 853 So.2d at 1184; *see also* SCR vol. 21, pp. 2272, 2289, 2300–01, 2303–03. The fact that defense counsel could have issued a peremptory challenge against Wilson but chose not to do so detracts from petitioner's argument that Wilson had infected the jury pool.

In *Patton v. Yount,* 467 U.S. 1025, 1031, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), a habeas case involving claims of juror bias from pre-trial publicity, the U.S. Supreme Court recognized that a trial judge's determinations regarding venire members' bias are essentially factual determinations entitled to deference on collateral review. The Supreme Court reiterated the *Patton* holding that state-court findings of fact are clothed with the presumption of correctness in *Wainwright v. Witt,* a habeas case which addressed dismissals of potential jurors for cause in a death penalty case:

> Last term, in *Patton* ... we held that a trial judge's finding that a particular venireman was not biased and therefore was properly seated was a finding of fact subject to [28 U.S.C.] § 2254(d). We noted that the question whether a venireman is biased has traditionally been determined through *voir dire* culminating in a finding by the trial judge concerning the venireman's state of mind. We also noted that such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province. Such determi-

nations were entitled to deference even on direct review; '[t]he respect paid such findings in a habeas proceeding certainly should be no less.'

469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (quoting *Patton,* 467 U.S. at 1038, 104 S.Ct. 2885).

The court engaged in a lengthy, painstaking, deliberate process of jury selection, during which the jurors were questioned extensively by the court and both parties. There was nothing in the answers of any of the twelve jurors to indicate that their knowledge that there had been a prior trial would impact their decision in any way. Out of an abundance of caution, the parties were even given an additional peremptory strike because of this issue. The Mississippi Supreme Court's determination that the trial court did not abuse its discretion in denying the motion for mistrial is neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, habeas relief on this claim should be denied.

*Ground Six*

█ In Ground Six, petitioner claims that the trial court erred in refusing to grant his motion for a mistrial based on a witness' improper comment regarding his right to testify or remain silent. Petition at 8; *see also Shelton,* 853 So.2d at 1184. Specifically, petitioner complains about the following comments by Chief Bobby Adams:

> [State]: I believe I had asked you if there was an attempt to interview Mr. Shelton after his arrest on the 21st of August?
>
> A: Yes.
>
> Q: And, again, would you tell us who was present at that time?

A: Myself, Assistant Chief Wade Woods, and Detective Michael Wallace.

Q: And was Mr. Shelton advised of his Miranda rights?

A: Yes, by Assistant Chief Wade Woods.

Q: Okay, and did he—was he promised anything in order to get him to talk? Were any threats made to him or other types of inducements?

A: No.

Q: Did he agree at that time to talk to you?

A: He made a statement.

Q: And basically what statement was—what questions were asked of him and what did he say?

A: After being advised of his Miranda rights, Assistant Chief Wade Woods asked Mr. Shelton if he was in downtown Yazoo City on Friday the 16th at about 5:00, and Mr. Shelton's response was yes.

Q: *Okay. All right Was any other statements made?*

A: *Mr. Shelton stopped talking at that time. No other statement was made.*

SCR vol. 25, p. 2855 (emphasis added).

Petitioner's attorney then objected and moved for a mistrial: "He said Mr. Shelton stopped talking at that key point. You cannot use a man's silence against him, and obviously he's saying Mr. Shelton chose to stop talking." The trial court denied the motion for a mistrial, stating the following: "I think nothing further than the fact that he stopped talking does not raise the ground for mistrial. That would be denied. I want you to kind of stay away from that so he can't go any further." *Id.* at 2856–57.

In *Doyle v. Ohio,* the U.S. Supreme Court held that the Due Process Clause prohibits the government from using a defendant's post-arrest, post-Miranda silence to create an inference of guilt. *U.S. v. Garcia–Flores,* 246 F.3d 451, 455 (5th Cir. 2001) (*citing Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). The test of whether comments or testimony violate *Doyle* is "whether the 'manifest intent* of the remarks was to comment on the defendant's silence, or (stated another way) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *U.S. v. Pennington,* 20 F.3d 593, 599 (5th Cir.1994) (citation omitted). Since there does not appear to have been a "manifest intent" by the prosecutor to elicit a remark from Chief Adams commenting on the defendant's silence, the court does not find that there was a *Doyle* violation.

Moreover, *Doyle* violations are reviewed under the doctrine of harmless error, by determining whether the error was harmless beyond a reasonable doubt. *Garcia–Flores,* 246 F.3d at 455 (citation omitted). Having reviewed the record, the court finds that, even assuming *arguendo* that there was a *Doyle* violation and the trial court erred in not granting petitioner's motion for a mistrial, any such error by the trial court was harmless. In this regard, the court notes that the prosecution did not refer to petitioner's *post-Miranda* silence in its closing argument, and the evidence at trial of petitioner's guilt was overwhelming. *See U.S. v. Garcia,* 144 Fed.Appx. 379, 380 (5th Cir.2005) (*per curiam*); *see also Garcia–Flores,* 246 F.3d at 456 ("When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless

error.") (citation omitted). Accordingly, this ground does not provide a basis for habeas relief.

### Grounds Eight and Fifteen

 In Ground Eight, petitioner claims that he was denied fundamental fairness during the appeal process by the failure of the court reporter to provide transcripts of all proceedings leading up to his conviction. Specifically, petitioner claims that prior to appeal, he requested that the entire record of the proceedings in his case be provided for appeal, but that the court reporter failed to include certain transcripts so that the appeal record was inaccurate and incomplete. *See* Petition at 9; *see also* Emergency Petition at 16–18. In Ground Fifteen, petitioner argues that he was denied fundamental fairness during the appeal process as a result of the trial court's failure to include in the record for appeal certain records and documents that were used in his case. Petition at 13; *see also* UPCCR Motion at Ground I.

Rule 10 of the Mississippi Rules of Appellate Procedure, which governs the content of the record submitted for review on appeal, provides in pertinent part: "The parties shall designate the content of the record pursuant to this rule, and the record shall consist of designated papers and exhibits filed in the trial court, the transcript of proceedings, if any, and in all cases a certified copy of the docket entries prepared by the clerk of the trial court." The record reflects that petitioner's appellate counsel filed a Designation of Record, pursuant to Rule 10, designating:

> The entire record of the proceeding, including, but not limited to, the indictments, all pleadings and processed [*sic*], all motions and orders concerning the same, a transcript of the trial of the case in the year of 2001, including all chamber and bench conferences and exhibits admitted into evidence, the judgment of conviction and proceeding of sentence, a copy of the Motion for New Trial and a copy of the Order overruling the same.

Exhibit I to Answer.

Nothing in the record indicates that the appellate court did not receive the documents it needed for petitioner's appeal. Moreover, petitioner does not explain how the allegedly omitted documents were necessary to his appeal. Accordingly, this claim has no merit and, therefore, habeas relief should be denied.

### Ground Seventeen

 In Ground Seventeen, petitioner claims that he received ineffective assistance of trial and appellate counsel, for a variety of reasons. Petition at 13–18. Each of these reasons will be addressed below as separate claims.

It was in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) that the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured: petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." In order to establish deficiency, petitioner must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* "To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.1986) (citation omitted). Further, petitioner must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that " 'the result of the proceedings was fundamentally unfair or unreliable.' " *Vuong v. Scott*, 62 F.3d 673, 685

(5th Cir.1995) (*quoting Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

This court's "scrutiny of counsel's performance must be highly deferential" and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Moawad,* 143 F.3d at 946 (observing that the Fifth Circuit "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotations and citations omitted). Moreover, under *Strickland,* appellate counsel[23] does not have a duty to raise every "colorable" claim on appeal, but rather, has broad discretion in determining which issues are more likely to be successful. *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see also Wicker v. McCotter,* 783 F.2d 487, 497 (5th Cir.1986) (holding that defendant's appellate counsel was not ineffective, where he "raised and extensively briefed a number of issues[;]" the fact that appellate counsel did not argue every possible point on appeal did not render him ineffective).

As a final point,

It bears repeating that the test for federal habeas purposes is *not* whether [the petitioner made the showing required under *Strickland* ]. Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (*Strickland* ), for succeeding on his [ineffective assistance of counsel] claim.

**23.** The *Strickland* test applies to the performance of appellate counsel, as well as to trial counsel. *See Evitts v. Lucey,* 469 U.S. 387,

*Busby v. Dretke,* 359 F.3d 708, 717 (5th Cir.2004), *cert. denied,* 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (emphasis and brackets in original).

*Claim A*

Petitioner claims that his appellate counsel were deficient for failing to raise on appeal that petitioner was denied effective assistance of counsel by Arnold and Stuckey "knowingly and intentionally" representing him "fraudulently" between 8/21/96 and 5/28/98. Petition at 13–14; *see also* UPCCR Motion & Memo at Ground m(A).

This claim is essentially a reiteration of petitioner's claims in Grounds One, Fourteen and Sixteen that Arnold and Stuckey were never appointed or retained to represent him. The court has already found this claim to be baseless. Accordingly, appellate counsel were not ineffective for failing to raise a meritless claim on appeal. *See U.S. v. Kimler,* 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.") (citations omitted); *see also Jones,* 463 U.S. at 751–54, 103 S.Ct. 3308; *Wicker,* 783 F.2d at 497.

*Claim B*

Petitioner claims that his appellate counsel were ineffective by failing to raise on appeal that petitioner was denied his statutory and constitutional rights to a speedy trial. Petition at 14.

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the U.S. Supreme Court established a four-part balancing test to be used for determining whether a defendant received a speedy

397–99, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir.1998).

trial within the meaning of the Sixth Amendment. *Knox v. Johnson,* 224 F.3d 470, 477 (5th Cir.2000). The *Barker* analysis requires the court to consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. The first factor—the length of the delay—serves as the "triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

██ Speedy trial rights attach upon arrest or indictment, whichever comes first. *U.S. v. Neal,* 27 F.3d 1035, 1042 (5th Cir.1994). Petitioner was arrested on August 21, 1996, and his first trial began on January 25, 1999. A mistrial was declared on or about February 5 or 6, 1999, and the second trial commenced on April 2, 2001. SCR vol. 1, pp. 100, 110; SCR vol. 5, pp. 642–43. Thus, the period between arrest and the first trial was twenty-nine months, and the period between the mistrial and the second trial was twenty-six months, for a total of fifty-one months. Whether considered separately or together, since the delay was more than one year, it may be regarded as "presumptively prejudicial" for purposes of prompting a full *Barker* analysis. *See U.S. v. Frye,* 372 F.3d 729, 737 (5th Cir.2004), *reh'g & reh'g en banc denied,* 115 Fed.Appx. 765 (5th Cir.2004), *cert. denied,* 543 U.S. 1155, 125 S.Ct. 1296, 161 L.Ed.2d 120 (2005); *Robinson v. Whitley,* 2 F.3d 562, 568 (5th Cir.1993). Once a court undertakes a full *Barker* analysis, it evaluates the first three factors "in order to determine whether prejudice will be presumed or whether actual prejudice must be shown." *Frye,* 372 F.3d at 736.

The first factor in the *Barker* analysis is length of delay. The Fifth Circuit has held that delays of less than five years are

not enough to presume prejudice. *See, e.g., U.S. v. Parker,* 505 F.3d 323, 328–29 (5th Cir.2007); *U.S. v. Hernandez,* 457 F.3d 416, 421 (5th Cir.2006); *Frye,* 372 F.3d at 737; *U.S. v. Serna–Villarreal,* 352 F.3d 225, 232 (5th Cir.2003), *cert. denied,* 541 U.S. 981, 124 S.Ct. 1896, 158 L.Ed.2d 481 (2004). Accordingly, this factor does not weigh in petitioner's favor. *Parker,* 505 F.3d at 328–29.

As for the second factor—the reasons for the delay—"[a] deliberate and intentional delay by the prosecution for the purpose of hindering the defense or otherwise gaining a tactical advantage is weighed heavily against the state." *Cowart v. Hargett,* 16 F.3d 642, 647 (5th Cir.1994). On the other hand, "[a]n unintentional and inadvertent delay ... is weighed much less heavily." *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. "Where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state." *Cowart,* 16 F.3d at 647 (*citing Barker,* 407 U.S. at 531, 92 S.Ct. 2182).

Trial was originally set for March 26, 1997. According to Attorney Lumumba (petitioner's second trial counsel), the trial was continued at Arnold's request from March 26, 1997 until August 26, 1997, due to previously-scheduled court obligations. Again, on August 25, 1997, the court entered an order continuing this case on defendant's *ore tenus* motion, until December 8, 1997, because of a death in Stuckey's family. SCR vol. 1, p. 110; SCR vol.

5, p. 641. These delays are clearly attributable to petitioner.[24]

The trial was delayed a fourth time when the court was unable to seat a jury on December 8, 1997, because too large a percentage of the panel knew the victim or her family, or the petitioner and his family, and therefore jury selection could not begin. SCR vol. 1, p. 110; SCR vol. 5, pp. 641–42. This delay cannot be attributed to either petitioner or the state.

On December 22, 1997, the court granted petitioner's motion for a change of venue and moved the case to Madison County. Subsequently, the court set the case for trial for September 21, 1998. Thereafter, petitioner informed the court that he would be retaining his own counsel after December 31, 1997, and the court gave him until May 10, 1998 to retain counsel. Prior to May 10, petitioner notified the court by letter that he needed additional time in which to retain counsel. Chokwe Lumumba was retained on May 28, 1998.[25] *See* SCR vol. 1, pp. 43–45, 93–94, 110; SCR vol. 5, p. 642. Respondents submit—and this court agrees—that this portion of the delay is attributable to petitioner.

Immediately after being retained, Lumumba moved for a continuance due to previously-scheduled court obligations. The state vigorously opposed the motion, but the court granted it and continued the trial date until January 19, 1999. Lumumba moved for another continuance just before trial, on the ground that he needed time to consult with an expert, and was granted an additional six days. Trial began on January 25, 1999, but resulted in a mistrial.[26] Thereafter, on March 15, 1999, pursuant to a motion filed on February 9, 1999, Lumumba and Alkebu–Ian were appointed to represent petitioner in the second trial which was scheduled for August 14, 2000. On July 12, 2000, Lumumba moved for a continuance due to previously-scheduled doctor's appointments out of state. Again, the state vigorously opposed the motion or, in the alternative, requested that a hearing be held to determine whether a continuance was actually warranted. The continuance was granted by the court without a hearing and trial was rescheduled to April 6, 2001. *See* SCR vol. 1, pp. 95–96, 100–04, 125; SCR vol. 4, p. 503; SCR vol. 5, pp. 601, 610, 621, 624–27, 631–32, 642. These delays must be attributed to petitioner.[27]

24. Petitioner appears to be arguing that these delays should be attributed to the state because he was represented by "imposter counsel" for the 648 days following his arrest, and that any events that occurred during that time period "were of no legal or constitutional effect." *See* Reply at 24–29; *see also* UPCCR Memo at Ground III(B). This argument is ridiculous. Petitioner was represented by Arnold and Stuckey from the day of his arrest until he retained his own counsel on May 28, 1998. As such, the continuances requested by Arnold and Stuckey clearly are attributable to petitioner.

25. Lumumba filed an entry of appearance twice, once on June 3, 1998 and again on June 8, 1998. Alkebu–Ian filed an entry of appearance on July 24, 1998. The order relieving Arnold as counsel was filed on July 6, 1998. SCR vol. 1, pp. 95, 105, 109, 123.

26. Respondents represent that according to the Yazoo County Circuit Clerk, there is no written order indicating a mistrial. Answer at 52, n. 22. Thus, the exact date of the mistrial is unknown. The trial record indicates that the jury for the first trial was qualified on January 25, 1999 and, therefore, respondents submit that the estimated date of mistrial was on or about February 6, 1999 (allowing one week for jury selection and one week for the trial). *Id.* According to the state, the mistrial was declared on February 5, 1999. SCR vol. 5, p. 642.

27. Lumumba and Alkebu–Ian moved for another continuance on February 28, 2001 because of health reasons and family matters. After a hearing on March 20, the court denied the motion by order dated April 9, 2001. SCR vol. 5, pp. 637, 669; SCR vol. 9, pp. 511–15.

Thus, approximately 21 months, at least, of the total 51–month delay are directly attributable to petitioner. The remaining time, mainly consisting of the delays resulting from the inability to seat a jury in December 1997 and following the mistrial in February 1999 are attributable neither to petitioner or to the state. The court finds that this factor is either neutral or weighs slightly in favor of the state.

The court will now examine the third factor—whether petitioner effectively asserted his right to a speedy trial. Nowhere in the record does it appear that petitioner ever asserted his right to a speedy trial. Indeed, considering how many continuances were requested on behalf of petitioner, it would have been implausible for defense counsel to assert the right. Petitioner argues that his failure to assert the right should not be held against him, because he was not provided "the constitutionally required legal assistance of counsel." UPCCR Memo at Ground III(B). As discussed above, however, petitioner had counsel and this argument has no merit. Accordingly, this factor weighs against petitioner.

The fourth *Barker* factor is prejudice to the defendant. "Since the first three factors do not weigh heavily against the state, [petitioner] must make an affirmative showing of actual prejudice." *Cowart*, 16 F.3d at 647. The Supreme Court has identified three interests which the constitutional right to a speedy trial seeks to safeguard: 1) preventing oppressive pretrial incarceration; 2) minimizing anxiety and concern of the accused; and 3) limiting the possibility that the defense will be impaired. *Id.* (*citing Barker*, 407 U.S. at 532, 92 S.Ct. 2182). The only argument petitioner makes with respect to this factor

is that the delays in bringing him to trial allowed the state to better build its case against him. *See, e.g.,* UPCCR Memo at Ground III(B). This is not the type of "prejudice" that can support a speedy trial claim. Accordingly, in the absence of a showing of actual prejudice, this factor must be weighed against petitioner.

In balancing all the *Barker* factors, it is clear that petitioner cannot establish that his attorneys' failure to raise the speedy trial issue on direct appeal constituted ineffective assistance of counsel, as the claim had little merit, and petitioner cannot demonstrate a reasonable probability that had his attorneys raised this issue, the result of his appeal would have been different. Thus, this claim for habeas relief should be denied.

### *Claim C*

In Claim C, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that his trial counsel were ineffective for failing to raise in the trial court that petitioner's initial counsel (Arnold and Stuckey) committed perjury while testifying during a motion hearing. Petition at 14. Specifically, petitioner claims that at a January 8, 1999 hearing on petitioner's motion to dismiss with prejudice, Arnold and Stuckey testified under oath that they were appointed as counsels of record when, in fact, they had not been.[28] UPCCR Motion & Memo at Ground III(C).

This is yet another variation on petitioner's baseless claim that Arnold and Stuckey were not appointed to represent him and that he therefore did not receive assistance of counsel during the time period when they were "fraudulently" representing him. Again, as noted with respect to

---

**28.** Oddly, petitioner states in support of this claim that Arnold and Stuckey were the "initial (first) counsels who represented petition-

er" and that they "stood along beside petitioner for approximately two (2) years into this case." UPCCR Memo at 37–38.

Claim A, appellate counsel were not ineffective for failing to raise this meritless claim. *See Kimler*, 167 F.3d at 893 (citations omitted); *Jones*, 463 U.S. at 751–54, 103 S.Ct. 3308; *Wicker*, 783 F.2d at 497.

*Claims D, E, P and Q*[29]

In Claims D, E and P, petitioner argues that his appellate counsel were ineffective for: failing to raise on appeal that his trial counsel were ineffective for stating in the presence of the jury that there had been a previous trial in this case; failing to object to the prosecution's statement to the jury during closing arguments that there was previous trial in this case; and failing to request a mistrial after both they and the prosecutor stated in the presence of the jury that there had been a previous trial in this case. In Claim Q, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred in failing to instruct the jury to disregard statements made by petitioner's trial counsel and the prosecutor regarding petitioner's previous trial. Petition at 14–15, 17.

A review of the trial transcript reveals that defense counsel referred to the previous trial numerous times during the trial—both during opening statements and while cross-examining various witnesses (for impeachment purposes). *See, e.g.*, SCR vols. 21–22, 23–24, 26, pp. 2332, 2351, 2372, 2401, 2418, 2420, 2463, 2522, 2533, 2552, 2834–36, 3070. Defense counsel's references to the previous trial clearly were a part of their strategy in presenting his case. This explains why defense counsel did not object to the prosecutor's remarks

during closing arguments and why they did not request a mistrial.[30] Petitioner has failed to overcome the presumption that trial counsel's choice of strategy was reasonable, and, moreover, petitioner cannot establish that appellate counsel were ineffective for failing to raise this issue on appeal. Accordingly, this claim does not provide a basis for habeas relief.

*Claim F*

In Claim F, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by failing to sustain petitioner's objection to testimony by Assistant Police Chief Wade Woods regarding the contents of telephone records that were not prepared by Woods. Petition at 15; *see also* UPCCR Motion & Memo at Ground III(F).

Prior to the admission of the alleged hearsay testimony by Chief Woods, defense counsel objected and the court listened to argument from both sides before ruling that the testimony would be admitted. SCR vol. 23, pp. 2687–93. The alleged hearsay testimony was based on telephone records from two sources—Talton Communications and Bell South. In the first instance, the prosecution handed Chief Woods a document from Talton Communications and the following exchange took place:

Q: (By Mr. Powell) I had you now what's been marked S–7 for identification. Do you recognize that?

A: I do.

Q: What's that, Mr. Woods?

---

**29.** These claims will be addressed together because they are all variations of the same argument and are based on the same facts.

**30.** The court notes that this issue was not mentioned in an extensive pre-trial "Motion to Prohibit Prosecutorial Misconduct" filed by petitioner's counsel. *See* SCR vol. 3, pp. 388–

**431.** It is likely that trial counsel felt that jurors* knowledge of the previous trial could work to petitioner's advantage—since one of the reasons why there would have been a previous trial was that the jurors were unable to reach an agreement on petitioner's guilt.

A: This is the printout of the phone calls originating from the Yazoo County jail inmate phone system as provided by Talton Communications for the date of 7/25/97 from 0050 in the morning until 1757 or 5:57 in the afternoon.

[. . . . .]

Q: All right. Now, you said you reviewed that document. Why did you review that document? What were you trying to determine by reviewing that document?

A: Trying to make note of the phone calls that were generated from the system outgoing just prior to noon on that day.

Q: Okay. And what specifically were you looking for?

A: I was looking for a phone number that may have indicated to me that it belonged to someone that the defendant may know or be related to.

Q: Okay. Now, in addition to that particular document to make that determination, did you review any other documents or public records?

A: Yes.

[. . . .]

Q: (By Mr. Powell) I hand you another document which has been marked as S-8 for identification. Can you tell me what that is?

A: This is a copy of the 9-1-1, Yazoo County 9-1-1 address and printout that is provided to the sheriff's office by the 9-1-1 commission.

Q: Okay. And why did you review that particular document?

A: Okay. On the printout from Talton, I made note of a telephone number that was called at 11:38 a.m., 673-9778 and I was looking for that number and it is on the 9-1-1 print-

out sheet, 673-9778, as being listed to Essie A. Shelton of 1691 Scotland Road, Bentonia.

Q: Okay. Are there any other numbers of interests or calls from the Talton billing records of outgoing calls that you reviewed that were of interest to you?

A: No, sir.

Thereafter, Chief Woods responded to questions pertaining to marks and notes that he had made on the Talton Communications' document which subsequently led to questions concerning Bell South records. When the Bell South records were mentioned, defense counsel objected and a lengthy discussion followed about the admissibility of testimony by Chief Woods regarding the contents of the records. Following arguments by both sides, the court allowed testimony pertaining to the Bell South records in which Chief Woods identified the documents and indicated that he had reviewed them "to determine if a call had been placed from 673-9778 to 948-5000, which is the Jackson, Mississippi, FBI office number." Chief Woods then indicated that based on his review of the documents, he determined that a phone call had been made from the jail to the FBI office. Defense counsel interjected another hearsay objection which was overruled by the court and Chief Woods continued to testify about why he had highlighted certain portions of the document and also testified briefly about the phone system at the jail. SCR vol. 24, pp. 2707–20.

The standard for reviewing evidentiary objections on appeal is set forth as follows:

Appellate review of determinations of whether to admit hearsay is limited to whether an error of law occurred, and if it did not, then appellate review is limited to the abuse of discretion standard

... Mere errors in evidentiary rulings by the trial court, unless accompanied by some adverse effect on 'a substantial right' of the defendant, do not require reversal on appeal ... It is the duty of the appellant, not only to demonstrate error in the introduction of the evidence, but also to show the prejudice to the defense that arose from that erroneous ruling.

*Bounds v. State*, 852 So.2d 51, 55 (Miss.Ct. App.2002) (citations omitted). Assuming *arguendo* that an error of law occurred, petitioner cannot show that he was prejudiced as a result. Petitioner argues that he was denied an opportunity to cross-examine the persons who actually prepared the records. *See* UPCCR Motion & Memo at Ground III(F). However, these records were authenticated at trial through the live testimony of representatives from those companies. Defense counsel chose not to cross-examine them. Moreover, Agent Biasello, who received the phone call in question, testified and was cross-examined by defense counsel. *See* SCR vol. 24, pp. 2775–2806. Accordingly, petitioner cannot establish that his appellate counsel's decision not to raise this issue on appeal constituted ineffective assistance of counsel and, therefore, this is not a basis for habeas relief.

### Claim G

In Claim G, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by failing to sustain petitioner's objection to the state admitting statements into evidence through a witness who did not make them. Petition at 15. Specifically, petitioner complains about written statements attached to lineup photographs that were admitted after being identified by Chief Bobby Adam. *See* UPCCR Motion & Memo at Ground III(G). The statements were those of the witnesses who participated in the lineup—Molly Crow, Katie Crow and Mary Wilson. SCR vols. 24–25, pp. 2849–52.

The record reflects that after Chief Adam identified the documents in question, defense counsel objected and the following exchange took place:

Mr. Lumumba: I don't have any problem with the exhibits other than the statements attached to them. I think they are self-serving. And even if they should have been entered, they would have had to have been entered through the person who made them. They can't be entered through—

The Court: What statements are you talking about?

Mr. Powell: The identification statements.

Mr. Lumumba: Yes. You cannot enter those through another party. As far as he's concerned, the statements are hearsay. If admissible at all, they would have had to come through the person who made them, and I don't think they can come through the person who made them because they're selfserving. All it does is bolsters their testimony. It's like testifying and offering half of these on the testimony. I don't think it's admissible.

Mr. Powell: They're marked for identification. They've been an issue in this thing.

The Court: The objection is overruled. They may be admitted.

SCR vol. 25, pp. 2858–59.

As noted *supra*, the standard of review on appeal for evidentiary rulings is, first, whether an error of law occurred, and if so, whether the defendant was prejudiced as a result. *Bounds*, 852 So.2d at 55 (citations omitted). Here, even assuming *arguendo* that petitioner could establish that an error of law occurred, he cannot estab-

lish prejudice. Petitioner argues that he was prejudiced because he could not cross-examine the witnesses who made the statements. *See* UPCCR Motion & Memo at Ground III(G). However, these three witnesses were cross-examined at length by defense counsel—particularly on the issue of the lineup. *See* SCR vols. 22–23, pp. 2401–21, 2459–89, 2520–61. Accordingly, petitioner cannot establish that his appellate counsel's decision not to pursue this issue on appeal constituted ineffective assistance of counsel and, therefore, this claim for habeas relief has no merit and should be denied.

*Claim H*

In Claim H, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by denying petitioner's motion to dismiss with prejudice. Petition at 15. Petitioner argues that the trial court should have granted the motion and barred petitioner from undergoing a subsequent trial. *See* UPCCR Motion & Memo at Ground I.

The record reflects that prior to trial, petitioner's attorney moved to dismiss with prejudice, arguing that because of the mistrial declared in petitioner's previous trial, a second trial was barred by double jeopardy. Specifically, petitioner's attorney argued that because the mistrial was granted by court *sua sponte* in petitioner's previous trial, without the consent or consultation of the state or the defendant, a second trial was barred unless there was "manifest necessity" for the mistrial.[31] Petitioner's attorney argued that there was not manifest necessity because the reason for the court declaring a mistrial

was that one juror had become ill; however, there was an alternate juror available to replace that juror. The court heard oral argument on the motion on March 20, 2001. After hearing arguments, the court explained that it had declared a mistrial in the first trial because the juror in question could not breathe, and the court found that to be "manifest necessity," as Mississippi law does not allow a juror to be replaced by an alternate once deliberations have begun. For that reason, the court denied the motion to dismiss from the bench and thereafter in an order dated April 9, 2001. SCR vol. 5, pp. 612–14, 672; SCR vol. 9, pp. 519–23.

■■■ The trial judge was correct that under Mississippi law, alternate jurors are required to be discharged once the jury has begun deliberations. *See* Miss.Code Ann. § 13–5–67 ("Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. An alternate who does not replace a regular juror shall be discharged at the time the jury retires to consider its verdict."); *see also Balfour v. State,* 598 So.2d 731, 754 (Miss.1992). Indeed, it is reversible error for a Mississippi trial court to substitute an alternate juror for a regular juror after the jury has begun deliberations. *Moawad v. Anderson,* 143 F.3d 942, 948 (5th Cir.1998). Thus, the trial court had no choice but to declare a mistrial once a juror became ill after deliberations had begun in petitioner's first trial. Accordingly, it was not unreasonable for petitioner's appellate counsel not raise this issue on appeal. Nor can petitioner cannot estab-

---

**31.** *See, e.g., Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) ("Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second

trial is the 'manifest necessity' standard . . ."). A mistrial following a jury's declaration that it was unable to reach a verdict is the most common form of "manifest necessity." *Id.*

lish that the appellate court likely would have reversed the trial court's denial of his motion to dismiss, had his appellate counsel raised the issue on appeal. Indeed, appellate courts must "give the judge's mistrial order the 'highest degree of respect,' as he is most familiar with the events that compromised the trial." *U.S. v. Bauman,* 887 F.2d 546, 549–50 (5th Cir.1989). For the foregoing reasons, this claim for habeas relief has no merit and should be denied.

### Claim I

In Claim I, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by denying petitioner's motion to dismiss. Petition at 15. The basis of this motion was the state's failure to bring petitioner's arrest in Warren County for auto burglary (while out on bond in Lauderdale County) to the attention of the trial court in Lauderdale County for a hearing to revoke petitioner's bond.[32] Petitioner argued in his motion that the state had an obligation to inform the trial court and to request a hearing to revoke petitioner's bond, pursuant to Article 3 § 29(2) of the Mississippi State Constitution,[33] and that had his bond been revoked, he would have been lawfully detained in custody at the time of the capital murder and, therefore, he would not have been able to commit it. *See* UPCCR Motion and Memo at Ground

III(H). After hearing argument from petitioner's attorney, the court denied the motion from the bench and thereafter by order dated April 9, 2001. SCR vol. 9, pp. 518–19; SCR vol. 5, p. 671.

Petitioner has pointed to no authority for the proposition that the state had an obligation to inform the trial court of petitioner's arrest. Nor has petitioner provided any authority to support his argument that even assuming the state had such an obligation and failed to do so, dismissal of his indictment was the appropriate and authorized remedy. The essence of petitioner's argument is that the state, and not he, was ultimately responsible for the murder in the instant case. This argument, albeit a creative one, was properly rejected by the trial court, and petitioner has provided no reason to believe that had his appellate counsel raised this issue on appeal, an appellate court would have reversed the trial court's decision. Accordingly, this claim for habeas relief has no merit and should be denied.

### Claim J

In Claim J, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by denying petitioner's motion to nolle prosse his indictment and to dismiss criminal charges against him. Petition at 16. Petitioner argues that the court should have granted the motion based on

---

**32.** According to petitioner's motion to dismiss with prejudice in the trial court, on March 28, 1996, while out on bail in Lauderdale County, petitioner was charged by a three-count indictment out of Lauderdale County with rape, armed robbery and aggravated assault. While out on bond in Lauderdale County, petitioner was then arrested in Warren County and charged with burglary of an automobile. The capital murder in the instant case took place on August 16, 1996. SCR vol. 5, p. 648.

**33.** "If a person charged with committing any offense that is punishable by death, life imprisonment or imprisonment for one (1) year or more in the penitentiary or any other state correctional facility is granted bail and (a) if that person is indicted for a felony committed while on bail; or (b) if the court, upon hearing, finds probable cause that the person has committed a felony while on bail, then the court shall revoke bail and shall order that the person be detained, without further bail, pending trial of the charge for which bail was revoked...."

prosecutorial misconduct—specifically, that the prosecutor, through his "imposter" attorneys (Arnold and Stuckey), attempted to coerce a fellow inmate, Willie Walter Cox, into signing a statement and testifying that petitioner had confessed to him on the capital murder charge, by promising that in return, Cox would be released from jail. *See* UPCCR Motion and Memo at Ground J; *see also* SCR vol. 4, p. 464–65.

The court held a hearing on this motion on January 8, 1999. At the hearing, Cox testified that in April 1998, he was visited at the Holmes County Jail by Arnold and Stuckey (Arnold was representing him at the time), and that Stuckey asked him to sign a piece of paper indicating that petitioner had confessed to him that he had committed the crime.[34] According to Cox, Stuckey told him that if he signed the paper, it would help him out on his case, because Stuckey could probably talk to the District Attorney and get the case dismissed. Arnold then testified that he and Stuckey never visited Cox together, that he never spoke to Cox about petitioner's case, and that no one from the district attorney's office ever requested that he talk to Cox. Arnold also testified that in his plea discussions with the district attorney, Cox was never offered anything other than "substantial jail time." Nor did Arnold anyone from the district attorney's office ever saying anything about Cox in relation to petitioner's case. Stuckey testified that he never asked Cox to sign a statement indicating that petitioner had confessed to the crime and that he never spoke with Cox while Arnold was present. *See* SCR vol. 6, pp. 13–58.

At the close of the hearing, the court ruled that there had been no evidence to suggest that even if the alleged statements had been made by Arnold and Stuckey to Cox, that the prosecution played any part in it and, accordingly, the court denied the motion to dismiss. *Id.* at 57–58. This court agrees that there was no testimony adduced during the hearing to suggest that the prosecution played any part in the alleged communications between Arnold/Stuckey and Cox. As petitioner failed to establish that any prosecutorial misconduct took place, his appellate counsel could not have been ineffective for choosing not to raise on appeal the trial court's denial of the motion to nolle prosse/dismiss. Accordingly, this claim for habeas relief has no merit and should be denied.

*Claim K*

In Claim K, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by denying his motion to suppress FBI Agent Michael Biasello's [35] statement. Petition at 16. Specifically, petitioner complains about Agent Biasello's alleged failure to give *Miranda* warnings prior to taking a statement from "a person alleging to be petitioner during a telephone conversation." UPCCR Memo & Motion at Ground III(K).

According to petitioner's motion to suppress and Agent Biasello's trial testimony, on July 25, 1997, Agent Biasello received a telephone call from petitioner, who identified himself and advised Agent Biasello that he was calling from the Yazoo County Jail where he was being held on a charge of capital murder.[36] During the conversa-

---

**34.** Cox denied that petitioner ever confessed to him. SCR vol. 6, p. 19.

**35.** Biasello is also incorrectly referred to in various pleadings and court records as Bascello or Viasalle.

**36.** The fact that petitioner initiated the call is corroborated by the testimony of petitioner's brother, who helped facilitate the three-way call. *See* SCR vol. 26, pp. 3076–77, 3082.

tion, petitioner made comments about the weapon used during the murder and the cause of the victim's death. The trial court denied the motion to suppress, finding that the statement was voluntarily made by petitioner on the telephone, that defendant had the ability to stop the conversation at any time he wished (which he did upon hanging up the telephone), that the contact was not solicited by the FBI, and that the statement was freely and voluntarily made. SCR vol. 4, pp. 524–25, 555; SCR vol. 9, pp. 503–04; SCR vol. 24, pp. 2782–99.

In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the U.S. Supreme Court held that in order to protect a suspect's Fifth Amendment privilege against self-incrimination, suspects interrogated while in police custody must be informed of their right to remain silent, that anything they say may be used against them in court, and that they are entitled to have an attorney present at the interrogation. The *Miranda* court defined "custodial interrogation" as "questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (emphasis added).

The testimony both at the suppression hearing and at trial clearly established that the statement at issue was not made as part of any "custodial interrogation," as it was initiated by petitioner, not by law enforcement officers. Accordingly, this claim has no merit, and appellate counsel's decision not to raise this issue on appeal cannot constitute ineffective assistance of counsel. This claim for habeas relief should be denied.

*Claim L*

In Claim L, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by denying petitioner's motion to quash indictment and challenge composition of grand and traverse jury pools. Petition at 16; *see also* UPCCR Motion & Memo at Ground III(L).

On September 2, 1998, petitioner's attorney moved to quash the indictment and challenge the composition of the grand and traverse jury pools, on the ground that certain social groups were unconstitutionally under-represented in the grand and traverse jury pools—specifically, African–Americans, young people, the unemployed, single people and transients/recent migrants. The court denied the motion from the bench on January 8, 1999, after petitioner's attorney indicated that he would not be presenting any oral argument. *See* SCR vol. 3, pp. 335–45; SCR vol. 6, pp. 8–9.

"The Sixth Amendment and Due Process Clause of the Fifth Amendment require that a jury be drawn 'from a fair cross section of the community.'" *U.S. v. Williams,* 264 F.3d 561, 567 (5th Cir.2001) (*citing Taylor v. Louisiana,* 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). In order to establish a prima facie violation of this fair cross section requirement, the defendant must show that: 1) the allegedly excluded group is "distinctive" in the community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Id.* (*citing Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)).

For this analysis, the court will assume that all five allegedly excluded groups are "distinctive" in the community and that the first factor is satisfied. With respect to the second and third factors, in order to

demonstrate systematic exclusion, petitioner must show not only that the members of the allegedly unrepresented groups were not adequately represented on his jury, but also that this was the general practice in other jury venires in the community. *Williams*, 264 F.3d at 568 (citations omitted); *see also U.S. v. DeFries*, 129 F.3d 1293, 1301 (D.C.Cir.1997) ("Underrepresentation of a cognizable group in a single venire, without evidence of a greater pattern, is insufficient to establish the 'systematic exclusion of the group' required by *Duren* ... From a small sample size based on one venire it is difficult to determine whether the disparity is random or systemic") (citations omitted); *Singleton v. Lockhart*, 871 F.2d 1395, 1399 (8th Cir. 1989) ("Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion."); *Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir.1986) ("[Defendant] must demonstrate ... not only that women were not adequately represented on his jury but also that this was the general practice in other venires."); *U.S. v. Miller*, 771 F.2d 1219, 1228 (9th Cir.1985) (holding that the *Duren* Court's use of the plural when describing "venires" from which "juries" are selected indicated that a violation of the under-representation element cannot be premised on under-representation on a single jury venire). Petitioner did not even allege (let alone provide evidence of) such systematic exclusion in his motion to quash—rather, he merely argued that the various groups were under-represented in his grand and traverse jury pools.[37] *See* SCR vol. 3, pp. 335–45.

This is insufficient to establish a violation of the fair cross section requirement.

In his motion to quash, petitioner also raised an equal protection challenge under the Fourteenth Amendment. In order to establish a prima facie equal protection violation, a defendant must demonstrate intentional discrimination in the selection of venires. *Williams*, 264 F.3d at 569 (*citing Alexander v. Louisiana*, 405 U.S. 625, 628–29, 92 S.Ct. 1221, 31 L.Ed.2d 536). The necessary inference of intentional discrimination can arise from "[a]n opportunity for discrimination in the operation of the jury selection system, coupled with a lesser degree of underrepresentation." *Id.* (citations omitted). Petitioner does not allege any opportunity for discrimination in the selection process. Thus, this claim has no merit. *See Williams*, 264 F.3d at 569.

For the foregoing reasons, petitioner cannot establish that his appellate counsel's decision not to raise this issue on appeal constituted ineffective assistance of counsel and, therefore, this claim for habeas relief has no merit and should be denied.

*Claim M*

In Claim M, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by denying petitioner's motion to quash indictment. Petition at 16; *see also* UPCCR Motion & Memo at Ground III(M).

Petitioner's attorney filed a motion to quash indictment on February 14, 2001, arguing that the following evidence sub-

---

37. Petitioner's counsel indicated in the motion that petitioner currently lacked the funds to obtain the necessary assistance of statistical and demographic experts in order to present his case. However, there is no indication in the record that petitioner ever requested funds from the court to hire such experts.

And, as noted above, at the hearing on January 8, 1999, petitioner's attorney did not present any further argument or materials but stated that he would rely on his written submission. SCR vol. 3, pp. 336–37; SCR vol. 6, pp. 8–9.

mitted to the grand jury was prejudicial and/or improper: 1) testimony about a charge for rape and robbery of a woman in Lauderdale County; and 2) testimony about an alleged auto burglary for which defendant was not indicted. At a hearing on March 20, 2001, defense counsel indicated that they had a witness on the motion who was not available to testify at that time, so the court continued the motion. It does not appear from the record that a hearing on the motion ever took place. By order dated April 9, 2001, the motion was denied. SCR vol., 5, pp. 633, 670; SCR vol. 9, pp. 515–17.

There is no evidence in the record that any prejudicial and/or improper evidence was presented to the grand jury. Accordingly, petitioner cannot establish that the trial judge's decision was in error, nor can he establish a reasonable probability that had his appellate counsel raised this issue on appeal, the appellate court would have reversed the trial court and granted the motion to quash. This claim is without merit.

*Claim N*

In Claim N, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial counsel were ineffective for failing to secure a ruling on petitioner's motion to quash indictment. Petition at 16. Petitioner appears to be referring to a motion to quash indictment filed on September 2, 1998, in which his counsel argued that the indictment was defective because, *inter alia*, it failed to supply the information required by statute and it failed to apprise him of the charge against him with sufficient specificity to allow him to prepare a defense. SCR vol. 2, pp. 295–97. *See* UPCCR Motion at Ground III(N) (arguing that as a result of the failure to secure a ruling on the motion, petitioner was tried under an "indictment [that] fails to supply the information required for petitioner to adequately prepare a defense …"); *see also* UPCCR Memo at Ground III(N) (arguing that the indictment was "fatal[ly] defective" because it failed to cite the proper sections of the Mississippi Code).

There is no ruling on this motion anywhere in the record. However, as discussed *infra* with respect to Claim V, the motion had no merit, as the indictment is clearly sufficient under Mississippi law. Accordingly, trial counsel's failure to secure a ruling on the motion is immaterial, as petitioner cannot demonstrate a reasonable probability that the trial court would have granted the motion. Further, petitioner's appellate counsel's failure to raise this issue on appeal clearly does not constitute ineffective assistance of counsel because the motion itself had no merit. This ground does not provide a basis for habeas relief.

*Claim O*

In Claim O, petitioner faults his appellate counsel for not raising on appeal that the trial court erred by failing to issue a ruling on petitioner's motion to quash indictment. Petition at 16–17.

Petitioner appears to be referring to the same motion to quash indictment discussed *supra* with respect to Claim N. *See* UPCCR Motion at Ground III(O) (arguing that as a result of the trial judge's failure to issue a ruling on the motion, petitioner was tried under an "indictment that does not adequately inform petitioner for petitioner to prepare his defense."). As with claim N, this claim has no merit.

*Claim R*

In Claim R, petitioner argues that his appellate counsel were ineffective for not raising on appeal that his trial counsel were ineffective in failing to raise during trial or in a motion for a new trial the inconsistencies in the testimony between

officer Wade Woods and Molly Crow regarding the viewing of a physical line-up held on August 21, 1996. Petition at 17. Specifically, petitioner argues that Officer Woods testified that the witnesses could not see below the waistline while viewing the lineup, whereas Ms. Crow testified that she could see the suspects' bodies from the heads to their feet. *See* UPCCR Motion at Ground III(R).

Having reviewed both witnesses' trial testimony, the court is unable to find any inconsistencies regarding this issue. Officer Woods did indicate that the witnesses viewing the lineup in question were unable to see the suspects from the waist down. SCR vol. 24, pp. 2742–43. However, this issue was not addressed during Molly Crow's (two) direct or cross examinations at trial.[38] *See* SCR vol. 22, pp. 2442–2500; SCR vol. 26, pp. 3118–34. It is true that at an earlier suppression hearing, Molly Crow testified that she could see the "whole bodies" of the men in the lineup. SCR vol. 6, p. 145. Thus, perhaps petitioner's complaint is that his trial counsel failed to question Molly about this at trial. Nevertheless, counsel's decision about what questions to ask witnesses at trial certainly falls within his discretion, as a matter of trial strategy. Accordingly, petitioner cannot establish that his trial counsel were ineffective for failing to explore this issue with Molly Crow. It follows, of course, that petitioner cannot establish that his appellate counsel's failure to raise this issue on appeal constitutes ineffective assistance of counsel. Thus, this is not a basis for habeas relief.

*Claim S*

In Claim S, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court erred by allowing the state's jury instructions S–3, S–4 and S–5 over petitioner's objections. Petition at 17.

Instruction S–3 (Instruction No. 10) states: "This phase of the trial deals only with the question of guilt or innocence of the defendant, Jarvis Shelton. In the event you find the defendant guilty of Capital Murder you will then and only then consider the appropriate sentence to be imposed." SCR vol. 4, p. 570. At trial, defense counsel objected to S–3 on the basis that the second sentence began with "In the event." SCR vol. 26, pp. 3108–09. Counsel offered no reasoning as to why he took issue with this language. *Id.*

Instruction S–4 (Instruction No. 11) states:

Your verdict in this case should be in one of the following forms:

If you find the defendant guilty of Capital Murder, the form of your verdict shall be:

"We, the jury, find the defendant, Jarvis Shelton, guilty of the crime of Capital Murder as is alleged in the indictment."

If you find the defendant not guilty, the form of your verdict shall be:

"We, the jury, find the defendant, Jarvis Shelton, not guilty."

Your verdict should be written on a separate sheet of paper and it need not be signed. *Id.* at 571. Defense counsel objected to this instruction because he believed it was "kind of messed up a little bit." SCR vol. 26, p. 3109. The court pointed out that the instruction was simply a form verdict, and defense counsel argued that the instruction should list the option of finding the defendant not guilty before

---

**38.** Molly testified twice at trial—first, during the state's case-in-chief, and then as a rebuttal witness for the state.

listing the option of finding the defendant guilty, since the state had the burden of proof. *Id.*

Instruction S–5 (Instruction No. 4) states:

> If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Jarvis Shelton, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts, whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant, Jarvis Shelton.

*Id.* at 572. Petitioner's counsel objected on the basis that the instruction did not explain that there could be many innocent reasons for flight.[39] SCR vol. 26, pp. 3109–10. However, as the court pointed out in response, this instruction gave the jurors the option of finding that the flight or hiding, if any, was from a "conscious sense of guilt" or whether it was "*caused by other things.*" SCR 3110–11 (emphasis added).

The court does not find that there is anything incorrect or improper about these instructions. And even if there were, when they are read in conjunction with the other instructions given in this case, the trial court did not commit any error in allowing these instructions to be given. *See Coleman v. State,* 697 So.2d 777, 782 (Miss.1997) ("In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.") (citation omitted); *see also Wilson v. State,* 967 So.2d 32, 36–37 (Miss.2007) ("In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.") (citation omitted).

Accordingly, petitioner cannot establish that appellate counsel's failure to raise this issue on appeal constitutes a deficiency, nor can he establish a reasonable probability that had his attorneys raised this issue on appeal, the result would have been different. This claim for habeas relief should be denied.

*Claim T*

In Claim T, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that his trial counsel were ineffective for failing to file and raise in support of a motion for a new trial certain prejudicial errors committed during trial. Petition at 18. These alleged prejudicial errors are all of the other claims in Ground Seventeen of the instant Petition. *See* UPCCR Motion & Memo at Ground III(T).

As the court has already determined the preceding claims in Ground Seventeen to be without merit, and, as set forth *infra,* will determine the remaining claims in Ground Seventeen also to be without merit, petitioner cannot establish that his appellate counsel were ineffective for failing to raise these meritless claims in a motion for new trial. *See Kimler,* 167 F.3d at 893 (citations omitted); *Jones,* 463 U.S. at 751–54, 103 S.Ct. 3308; *Wicker,* 783 F.2d at 497. Accordingly, this claim has no merit.

*Claim U*

In Claim U, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that his trial coun-

---

**39.** Petitioner's counsel did not object to a flight instruction being given; rather, he objected to the wording of the flight instruction. *See* SCR vol. 26, pp. 3109–10.

sel were ineffective for failing to raise in the trial court that petitioner's case should be dismissed for prosecutorial and judicial misconduct. Petition at 18. Essentially, this is yet another reiteration of petitioner's argument that he was being fraudulently and illegally represented by attorneys Arnold and Stuckey. Petitioner argues that the prosecutor and trial judge allowed Arnold and Stuckey to represent him when they knew that they had not actually been appointed or retained as his counsel, and that his trial counsel should have reported this to the appropriate professional authorities. *See* UPCCR Motion & Memo at Ground III(U).

As with Grounds One, Fourteen and Sixteen, and Claims A and C of Ground Seventeen, this claim has no merit, and therefore it cannot form the basis of an ineffective assistance claim against petitioner's appellate counsel. *See Kimler,* 167 F.3d at 893 (citations omitted); *Jones,* 463 U.S. at 751–54, 103 S.Ct. 3308; *Wicker,* 783 F.2d at 497.

*Claim V*

In Claim V, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that he was tried, convicted and sentenced on a defective indictment which also divested the court of jurisdiction to try the case. Petition at 18. Specifically, petitioner avers that the indictment failed to supply the information required by Miss.Code Ann, § 99–7–3,[40] that it did not apprise him of the charge against him with sufficient specificity to allow him to prepare his defense and to plead any judgment as a bar to any later proceedings based on the same offense, that it failed to allege aggravating circumstances, that the trial judge failed to charge the grand jury as required by Miss.

Crim. P. § 2.01 and recommended to the grand jury that they target the defendant in this case, that the indictment is predicated upon matters illegally and improperly obtained and presented to the grand jury, and that petitioner was not taken before a magistrate forthwith. *See* UPCCR Motion & Memo at Ground III(V); *see also* SCR vol. 2, pp. 295–97. Accordingly, petitioner argues, because the grand jury returned a defective indictment, the trial court had no power to hear the case or to impose sentence upon petitioner. *See* UPCCR Motion & Memo at Ground III(V).

 The purpose of an indictment is "to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense and to enable him to effectively assert his constitutional right against double jeopardy in the event of a future prosecution for the same offense." *Moses v. State,* 795 So.2d 569, 571 (Miss.App.2001) (citation omitted). To that end, Rule 7.06 of the Uniform Rules of the Circuit and County Court Practice states that an indictment shall contain "the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation." That rule also provides that an indictment must include: the name of the accused; the date on which the indictment was filed in court; a statement that the prosecution is brought in the name and by the authority of the state of Mississippi; the county and judicial district in which the indictment is brought; the date and, if applicable, the time at which the offense was alleged to have been committed; the

---

**40.** This section provides: "The words 'force and arms' or the words 'contrary to the form of the statute,' or any other merely formal or technical words, shall not be necessary in an indictment if, without them, the offense be certainly and substantially described."

signature of the foreman of the grand jury issuing it; and the words "against the peace and dignity of the state."

▮ The indictment at issue in this case, titled "Indictment Capital Murder" charges that petitioner

did on or about the 16th day of August, 1996, in Yazoo County, Mississippi, unlawfully, willfully, feloniously, and without authority of law kill and murder Lisa Crow, a human being, while the said JARVIS SHELTON was then and there engaged in the commission of the crime of armed robbery of Lisa Crow, in violation of Section 97–3–79 of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

It also contains the date on which it was filed in court (January 24, 1997) and is signed by the foreman. SCR vol. 1, p. 31. This indictment sufficiently apprises petitioner of the nature and essential facts of the charge against him,[41] and contains all of the necessary information prescribed in the UPCCR. The indictment is clearly sufficient under Mississippi law. *See, e.g., Harris v. State,* 944 So.2d 900, 907–08 (Miss.App.2006) (rejecting claim that substantially similar indictment was defective). Nor does petitioner provide any facts to support his other challenges to the validity of the indictment. Accordingly, petitioner's appellate counsel's failure to raise this issue on appeal does not constitute ineffective assistance of counsel and this claim has no merit.

### Claim W

In Claim W, petitioner argues that his appellate counsel were ineffective for failing to raise on appeal that the trial court failed to include in the record for appeal certain documents used in this case that were "essential" to petitioner's appeal. Petition at 18; *see also* UPCCR Motion & Memo at Ground III(W).

Nowhere in his Petition or in his UPCCR Motion does petitioner identify the documents that he alleges were omitted from the record on appeal. Thus, this claim cannot be the basis for habeas relief, as ("mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"). *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983) (citation omitted). Accordingly, this claim is without merit.[42]

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that the relief sought in Jarvis Jay Shelton's Petition for Writ of Habeas Corpus [1] be denied, that his request for an evidentiary hearing[43] be denied, and that the Petition be dismissed with prejudice.

---

**41.** Under Mississippi statute, capital murder is defined as, *inter alia,* "[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with or without any design to effect death, by an person engaged in the commission of the crime of ... robbery ...". Miss.Code Ann. § 97–3–19. Contrary to petitioner's argument, a capital murder indictment is not required to list aggravating factor(s) upon which state intends to rely at sentencing. Because the death penalty statute (Miss.Code Ann. § 99–19–101) clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the death penalty, a capital murder indictment puts the defendant on notice that the death penalty may result. *Brawner v. State,* 947 So.2d 254, 266 (Miss.2006); *Powers v. State,* 945 So.2d 386, 396 (Miss.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 3006, 168 L.Ed.2d 733 (2007).

**42.** Assuming they are the same documents identified in Ground Eight, the court has already found that Ground to be without merit.

**43.** *See* Memo at 19.

NOTICE OF RIGHT TO
APPEAL/OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996).

January 24, 2008.